### Essex County Quarter Sessions.

STATE OF NEW JERSEY, PLAINTIFF, v. WILLIAM BEST, DEFENDANT.

For the motion, *William Schilling*.

\*　　\*　　\*　　\*　　\*　　\*　　\*

UNGER, S. C. C. This is an application to quash a search warrant issued under the act entitled "An act concerning intoxicating liquor, used or to be used for beverage purposes," approved March 17th, 1922 (*Pamph. L.* 1922, *ch.* 255), and to secure the return of the liquor seized in the execution of the warrant. The warrant was issued on December 9th, 1929, upon the application of Joseph Kaminski, supported by the affidavit of himself and Victor Hugo, dated December 6th, 1929. The affidavit of Kaminski recites that on November 26th, 1929, he, together with Victor Hugo, entered the bar room in premises known as No. 44 First street, corner of Central avenue, Newark, New Jersey, which consists of a two-story brick structure, with a closed entrance on the corner and an open entrance on First street which leads to a hallway, the first door to the left through that hallway leading to a bar room on the ground floor, equipped with a bar, back bar, a cash register, tables, chairs and other equipment. The affidavit further recites that three men at the bar were drinking

what appeared to be whiskey and beer, and two of them were apparently under the influence of liquor.

The affiant ordered two glasses of beer and two glasses of whiskey, and was served from a bottle taken from under the front bar, and found the contents to be beer and whiskey for which the sum of $1.30 was paid and rung up on a cash register.

So much of Joseph Kaminski's affidavit is supported by Victor Hugo. Kaminski for himself deposed that on November 13th, 1929, he entered the same premises and purchased a glass of whiskey.

The affidavit also contains an accurate description of the person in charge of the premises.

The warrant issued authorizes and commands the officers to whom it was addressed to forthwith enter at any time of the day, the bar room in the premises commonly known as No. 44 First street, and proceeds to describe the premises as hereinabove set forth, and authorizes and commands such officer to there diligently search any locked desk, drawer, safe, vault, closet, icebox, container and receptacle contained therein, and any cellar, basement, subcellar, room or rooms connected or used in connection therewith, for all such intoxicating beer, whiskey and other liquor that may be kept or stored therein.

The warrant was executed and resulted in the seizure, on December 16th, 1929, of fourteen bottles of assorted, alleged intoxicating liquor. The search and seizure took place in the day time.

The present application is made pursuant to the provisions of the statute, and the first of seven grounds urged by the defendant on his motion to quash is that the warrant in question authorized a search at any time of the day or night, and that there is no positive proof in the case that liquor was on the premises so as to warrant a search in the night time.

The warrant provides for a search "at any time of the day," and the contention of the defendant that this provision authorizes a search in the night time as well as in the day time finds support in many decision. The word "day" is defined in a number of ways in 17 *C. J.* 1131, among them the following:

"A civil day of twenty-four hours, beginning and ending at midnight, the period of time between any midnight and the midnight following; the space of twenty-four hours from midnight to midnight; the unit of time, commencing at twelve P. M. and ending at twelve P. M., running from midnight to midnight; the time elapsing from one midnight to the succeeding one; twenty-four hours, extending from midnight to midnight, including morning, evening and night. Also a period of time consisting of twenty-four hours, and including the solar day and the night; the space of time which elapses while the earth makes a complete revolution upon its axis; a division of time; twenty-four hours; twenty-four hours, and not merely the day as popularly understood, from sunrise to sunset, or during the time that the light of the sun is visible."

However, the affidavits upon which the warrant was issued contain a positive statement that on November 26th, 1929, at five-thirty P. M., liquor was purchased in the premises and the affiants severally stated that they tasted the contents served them and found them to be beer and whiskey. The defendant contends that this statement is insufficient to warrant a search in the night time for the reason that the warrant was not issued until December 9th, 1929, and was not executed until December 16th, 1929, urging that positive knowledge cannot extend over such a lapse of time. In support of his contention in this respect, the defendant cites *In re Hollywood Cabaret, 5 Fed. Rep. (2d ed.) 651 (C. C. A. Second Circuit)*. In that case it appeared that one of the warrants concerned issued three and one-half weeks after the affiant visited the place to be searched. No information was before the court respecting the duration of time in connection with another warrant under consideration. The court said:

"If such a short time had elapsed between the purchase of liquor upon the premises and the making of the affidavit and issue of the search warrant that it was quite certain that the liquor seen or tasted was from the same stock that would still naturally be upon the premises, it is unnecessary for us to determine that the averment of positive knowledge might not be sufficient for a night search warrant. We do not pass upon

such a situation as that. But where a number of weeks or an indefinite time has elapsed between the inspection of the premises and the making of the affidavit, there can be no positive knowledge unless the work "positive" is indistinguishable from "probable."

The instant case is, however, distinguishable. Ten days intervened between the purchase and the affidavit. The affidavit indicates that the premises in which the liquor was purchased was fitted up in a rather permanent fashion for the sale of liquor, for it contained a bar and back bar and purchases were rung up on a cash register. In addition there were tables, chairs and a gambling machine. The affiants observed men apparently under the influence of liquor in the premises. Liquor was purchased on two occasions. When such proofs as these are shown, the legal presumption is that the condition indicated continued to exist for a reasonable time thereafter, nothing to the contrary appearing. From the last purchase referred to in the affidavits, until the date of the issuance of the warrant, thirteen days elapsed and up to the time of the execution of the warrant, twenty days elapsed. I am constrained to hold that under the circumstances the intervening time was not unreasonable and that the allegations in the affidavits are sufficiently positive to meet with the requirements of the law. *Hawker* v. *Queck,* 1 *Fed. Rep.* (*2d ed.*) 77; *In re Hollywood Cabaret, supra* (dissenting opinion).

The second ground relied upon by the defendant is that the description in the warrant is too broad for the reason that it authorizes a search of any locked drawer, desk, safe, vault, closet, icebox, container and receptacle therein contained, and any cellar, basement, subcellar, room or rooms connected or used in connection therewith. It is contended that the word "therewith" last referred to means the entire building known as No. 44 First street, Newark, New Jersey. The reading of the warrant clearly indicates that this is not a fact and that it refers to the saloon described therein.

The affidavits reciting as they do, an establishment of a permanent nature where more than one purchase of liquor was made, and where men were seen intoxicated, the authori-

zation to make the search indicated of receptacles or rooms used in connection with the saloon proper was entirely warranted. The description is none the less one of a particular place. It includes merely the appurtenances of a described place used as a saloon.

The next point made is that the warrant does not particularly describe the property to be seized. The warrant authorized a search for intoxicating beer, whiskey and other liquor. Section 2 of the act provides that the word "liquor" and the words "intoxicating liquor" shall be construed to mean and to include:

"(A) Alcohol, and brandy, whiskey, rum, gin, beer, ale, porter, wine and any other spirituous, vinous, malt, brewed or fermented liquor or mixed liquors, which contain one-half of one per centum or more of alcohol, by volume, and which are used or to be used for beverage purposes;

"(B) All liquids, admixtures and compounds, whether medicated, proprietary, patented or not, and by whatever name called, which contain one-half of one per centum, or more, of alcohol, by volume, and which are fit for use for beverage purposes.

"In any complaint, warrant, accusation, allegation or indictment, the word 'liquor' shall be a sufficient description of any or all of the liquors or liquids, defined herein."

The officers who searched the property seized a quantity of liquor, and the statute and warrant are broad enough to support the seizure made.

But the defendant alleges the warrant does not recite that the search was to be made for liquor for beverage purposes and reliance is placed upon *State* v. *Freulli*, 98 *N. J. L.* 395; 119 *All. Rep.* 787. In that case, a Supreme Court decision, it was held that an indictment under the statute now under consideration merely charging an unlawful sale of liquor without adding that such sale was for beverage purposes, alleges no offense under the statute. This decision rests upon the fact that the statute in question relates to liquor to be used for beverage purposes and that chapter 241 of *Pamph. L.* 1922, commonly referred to as the Non-Beverage act, permits the

sale of intoxicating liquor under certain circumstances which might be unlawful under the statute first mentioned. Unless an indictment contains a statement that the violation consisted in ·dealing with liquor for beverage purposes, the accused would be unable to determine the nature of the accusation and for violation for which statute he was indicted.

The objects of a search warrant, however, and its nature are totally dissimilar. It is but an order in writing signed by a magistrate, directed to a peace officer, commanding him to search for personal property and bring it before the magistrate. *People* v. *Kempner*, 208 *N. Y.* 16; 101 *N. E. Rep.* 794. The search warrant was not known to the early common law. Its use was at first confined to the search for stolen goods. The abuses which grew up in connection with the use of search warrants and the writs of assistance in early colonial times, lead to constitutional provisions, to prevent *unreasonable* searches and seizures, but not searches and seizures which are reasonable. The warrant then, being of a nature different from that of an indictment and serving an entirely different purpose need not allege that the dealing with liquor was a dealing with it for beverage purposes. The issuance of a warrant is in itself a finding by the magistrate, that there is probable cause for its issuance, and a warrant is only issued where it is alleged that there has been a violation of the law.

The officer is required to, and did leave a copy of the warrant together with a receipt for the property taken, upon executing it. The warrant here indicates on its face that it was issued for the violation of "sections 10 and 15 of the act entitled, 'An act concerning intoxicating liquor, used or to be used for beverage purposes,' approved March 17th, 1922." The defendant cannot prevail upon this ground, in any event, for this reason.

The fourth ground alleged, is that the warrant authorized a search of the wrong premises. The warrant and affidavits referred to the saloon as being in the building known as No. 44 First street, Newark, New Jersey, and referred to it as a corner building located at First street and Central avenue. The defendant contends that the correct address of the build-

ing is No. 401 Central avenue, and not No. 44 First street. Testimony on this point was taken and it indicates that there is an entrance to the premises on First street and that by going through this entrance which leads to hallway, access may be had to the bar room in the manner described in the affidavits. The testimony indicates clearly that there is no merit to this point.

Another allegation made by the defendant is that the warrant does not allege or set forth any date on which liquor was sold. *State v. Freulli, supra,* is relied upon here again. It is distinguishable for the same reasons stated above.

Furthermore, section 19 of the act requires that in issuing a search warrant, the magistrate must state the particular grounds or probable cause for its issue and the names of the persons whose affidavits have been taken in support thereof. The warrant in the instant case complies with this requirement, although it does not particularly state the dates on which liquor was purchased. The act, however, contains the following provisions:

"26. If the ground on which the warrants were issued be controverted, the magistrate must proceed to take testimony in relation thereto, and the testimony of each witness must be reduced to writing and subscribed by him.

27. If, on the return of any search warrant, it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause the property to be returned to the person from whom it was taken; but if it appears that the property taken is the same as that described in the warrant, and that there is probable cause for believing the existence of the grounds on which the warrant was issued, then the magistrate shall order the same to be retained in the custody of the person seizing it, or to be otherwise disposed of according to law."

Although it was open to the defendant to take testimony on the return of the warrant on this point, he has offered none which in any way relates to the dates of the sales of liquor referred to in the affidavits. Nothing is made to appear that

there was no probable cause for believing the existence of the grounds upon which the warrant was issued, but on the contrary, the results of the search and seizure sustain the allegations of the affidavits and the finding of probable cause. It is true that the question to be determined on such a motion as this, is not to be decided from the results of the search, but rather from the situation presented when the warrant is issued. So considering this point, the warrant on its face is in a form sufficient to inform the defendant of the nature of the charge made by the affidavits, and if he be in doubt as to the dates of the alleged violation, the statute affords him ample protection of his rights in this behalf.

The sixth point made is that there was no real evidence before the court when the warrant was issued. It is said that the affiants stated that they purchased what appeared to be beer and whiskey. An examination of the affidavits, however, indicate that the deponents clearly stated that they asked for beer and whiskey and tasted the contents served them and found it to be beer and whiskey.

The last ground urged in support of this motion is that the receipt left by the officer does not specify in detail the property taken. The receipt is for fourteen bottles of assorted alleged liquor, and the provisions hereinabove referred to in section 2 of the act, giving to the word "liquor" a meaning which embraces all of the liquids referred to therein, is broad enough to cover the liquids seized in this case. The receipt is not designed to serve, for the defendant, a higher office or purpose than a warrant or an indictment and since the word "liquor" is deemed sufficient in those instruments, it satisfies the requirements of the receipt as well. The return of the warrant does not indicate that a receipt was left, but where in fact, as here, this was done, the return is amendable to conform to the fact. *Gandreau* v. *United States, 300 Fed. Rep.* 21 (*C. C. A. First Circuit*).

The motion is denied.