[Civ. No. 17684.   First Dist., Div. One.   Sept. 13, 1957.]

LOUIS JOHN ARATA et al., Petitioners, v. THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent.

Joseph C. Haughey for Petitioners.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Certain personal property was seized under authority of a search warrant. At the preliminary examination the defendants challenged the legality of the seizure because of asserted insufficiency of the affidavit upon which the warrant was based. They sought by their cross-examination of the affiant to show that significant facts stated in the affidavit were not within his personal knowledge and therefore did not furnish legal support for an inference of "probable cause" (State Const., art. I, § 19) upon the part of the judge who, upon reading the affidavit, issued the warrant.

The committing magistrate found against the defendants. Then, in the superior court, they made and the court denied a motion to dismiss the information for lack of reasonable or probable cause. They now petition us for a writ of prohibition.

This is an appropriate inquiry. "Prohibition is the proper remedy to prevent threatened action in excess of jurisdiction . . . , and it is an appropriate means to test the right of the People to proceed with a prosecution when the validity of an indictment or information is challenged on the ground that the defendant had been indicted or committed without probable cause." (*Rogers* v. *Superior Court,* 46 Cal. 2d 3, 7 [291 P.2d 921].) When, as in this case, all of the evidence tending to show probable cause was seized pursuant to a search warrant, the validity of the warrant, if questioned, becomes an issue.

We must bear in mind, of course, that the issuance of a search warrant is a judicial act. A warrant may be issued only upon "probable cause, supported by oath or affirmation"

(Const., art. I, § 19; Pen. Code, § 1525) by a "magistrate (Pen. Code, § 1523) who must examine on oath the plaintiff and any witnesses he may produce and take their depositions (§ 1526) and thereupon be "satisfied of the existence of the grounds [see § 1524] of the application, or that there is probable cause to believe their existence" (§ 1528). (See *Mai* v. *State* (1928), 152 Miss. 225 [119 So. 177, 178], and *Sykes* v. *State* (1930), 157 Miss. 600 [128 So. 753, 754]; issuance of search warrant is an adjudication that probable cause exists for the search.)

The only review of such a judicial act that is specifically provided by law, is the review sanctioned by sections 1539 and 1540 of the Penal Code. "If the grounds on which the warrant was issued be controverted, he [the magistrate who issued the search warrant] must proceed to take testimony . . ." (§ 1539.) "If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate [he who issued the warrant] must cause it to be restored to the person from whom it was taken." (§ 1540.)

When, as in this case, the defendants fail to pursue this remedy, they should be and, under the circumstances of this case, are precluded from controverting the facts stated in the affidavit upon which the search warrant was based. (See *State* v. *Best* (1930), 8 N.J.Misc. 271 [150 A. 44, 48]; *United States* v. *McKay*, 2 F.2d 257, 259-260.) Additionally persuasive of this view is the majority rule that "apart from governing statutory provisions . . . one against whom a search warrant is directed may not dispute the matters alleged in the verified complaint supporting the warrant." (5 A.L.R. 2d 396. See authorities collected at pages 396-405 of 5 A.L.R.2d, and in 1948-1957 A.L.R.2d Supp. Serv. at p. 270.)

■ This, of course, does not preclude a review of the decision of the magistrate by reading the warrant and determining therefrom its sufficiency as a matter of law. That was what the court did in *People* v. *Berger*, 44 Cal.2d 459 [282 P.2d 509], indicated by the statement that the warrant "placed no restrictions on the area to be searched or the things to be seized" (p. 461), a violation of the requirement that the warrant "particularly" describe "the place to be searched and the persons and things to be seized" (Const., art. I, § 19; supplemented by Pen. Code, § 1525).

■ In the instant case, our examination is of the sup-

porting affidavit, to ascertain if it furnished sufficient competent evidence to support the magistrate's finding of probable cause when he issued the warrant.

The affiant was A. L. Lamport, an investigator in the office of the district attorney of the county. He stated in the affidavit that "he has, and there is just, probable and reasonable cause to believe, and that he does believe, that there is now in the possession" of the defendants, at 1683 and 1687 Old Mission Road "certain bookmaking paraphernalia, to wit: papers, charts, records, ledgers, pencils, scratch sheets, racing form publications, markers, money, radios, telephones and other bookmaking property and paraphernalia"; that the defendants "intend to use the same as a means of committing a public offense . . . the crime of felony in violation of section 337a of the Penal Code," and that said property "will be needed as evidence in the prosecution for said offense."

Having named the persons, described the property and place to be searched, specified the grounds for the search, and stated there is probable and reasonable cause to believe that the facts thus recited do exist, the affiant proceeded to detail the evidentiary facts upon which he based his belief.

Affiant stated that he is an investigator in the office of the district attorney and "in such capacity has been advised by reliable persons that the telephones in the above premises are being used for bookmaking operations"; that the defendants have been seen entering the premises in the morning and leaving in the afternoon; that they do not reside there and have no visible legitimate cause to be there; and that "affiant has reasonable and probable cause to believe" that there are two telephone communication lines serving the premises, numbers PLaza 6-4881 and PLaza 6-1481.

"Further, that an informant advised that a bookmaking operation was being conducted at telephone number JU 6-2557; that upon investigation it was determined this was an unlisted telephone number in the name of [defendant] WILLIAM E. DOWER and that the telephone was located at 91 Oriente Street, Bayshore City, San Mateo County"; that the premises at 91 Oriente Street were put under surveillance; various persons were observed coming and going on numerous occasions during the usual and normal hours of activity for a bookmaking operation, said persons apparently having no lawful business on the premises; that while the premises were under surveillance its occupancy terminated and all activity above mentioned terminated and the telephone above referred

to was ordered disconnected; that "subsequently the same informant has again advised that the same bookmaking operation has been transferred and stated that they are now using telephones listed as numbers PLaza 6-4881 and PLaza 6-1481, which telephones are, according to investigation, in the premises known as 1683-1687 Old Mission Road, respectively"; that surveillance was placed on the premises at Old Mission Road; that "automobiles and persons connected in the Bayshore City suspected bookmaking activity have been observed coming and going on numerous occasions without apparent lawful business thereon during the usual hours of normal activity for bookmaking operation;

"That the premises known as 1681 and 1683 on Old Mission Road have been the subject in the recent past of an investigation by law enforcement agencies centering around a bookmaking operation in San Mateo County."

Next, affiant asserted that defendant Arata had been arrested three times for violation of section 337a of the Penal Code and has in the past purchased a federal wagering stamp; and that defendant Dower has been the subject of an investigation centering about a bookmaking operation in San Mateo County.

The specific facts thus laid before the magistrate furnished ample support for his becoming *"satisfied* of the existence of the grounds of the application, or *that there is probable cause to believe* their existence" (Pen. Code, § 1528; emphasis added), if he believed the affiant;* i.e., if the magistrate could properly consider facts stated upon the information and belief of the affiant.

This question was given a favorable answer in the early case of *Collins* v. *Lean*, 68 Cal. 284 [9 P. 173]. The defendant, a duly appointed, qualified and acting police officer, "acting upon the information which he had received from one Handly" (p. 286) that the plaintiff had sold Handly a lottery ticket and was engaged in the business of selling lottery tickets applied to a justice of the peace and obtained a search warrant. In holding that the warrant was not invalid, the court said, the "defendant was informed that the plaintiff had the tickets in his possession; he was an officer of

---

*It is the function of the trier of the facts, not that of a reviewing court, to appraise and weigh the evidence when presented by affidavit as well as when presented by oral testimony. (*People* v. *Kirk*, 109 Cal.App.2d 203, 207 [240 P.2d 630]; *Barratti* v. *Barratti*, 109 Cal.App. 2d 917, 922 [242 P.2d 22]; *Cameron* v. *Cameron*, 110 Cal.App.2d 258, 261 [242 P.2d 408].)

the law, whose plain duty it was to suppress crime, if he lawfully could; he acted on this information in good faith, believing it to be true, and the result showed his belief to be well founded." (P. 287.) It is not altogether clear from the reported decision whether the facts stated in the supporting affidavit were expressed positively or in terms of the information and belief of the affiant but that does not seem significant in view of the Supreme Court's approval of the officer's use of information supplied by his informant.

Consideration was given this question in the recent case of *People* v. *Acosta,* 142 Cal.App.2d 59 [298 P.2d 29]. A search warrant had been issued upon an affidavit which, as to a considerable number of the facts recited, declared that they were "told" to the affiant "by an informant, whose name can not be revealed without endangering the safety of said informant" (p. 61) who said that he, the informant, had observed those facts. ■ Concerning this hearsay evidence, the reviewing court said in part: "In determining probable cause for issuance of a search warrant the court is not called upon to determine whether the offense charged was in fact committed, but is concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit for the belief that the law was being violated upon the premises to be searched. If apparent facts set out in the affidavit were such that a reasonably prudent man would be led to believe that there was a commission of the offense charged, there is reasonable cause. (*Carney* v. *United States,* 163 F.2d 784, 786 [certiorari denied, 332 U.S. 824 (68 S.Ct. 165, 92 L.Ed. 400)].)" (Pp. 62-63.) It is true that some of the facts recited in the affidavit in the Acosta case were stated positively and not upon information and belief but that does not diminish the persuasiveness and force of that court's ruling on the hearsay portion of the affidavit.

It happens in recent years that our courts have had frequent occasion to consider the use of hearsay by law enforcement officers when making arrests without a search warrant. The problem is essentially the same whether the arrest is made with or without a warrant. In arresting without a warrant the officer must have "reasonable cause for believing" that the person arrested committed the crime. (Pen. Code, § 836, subd. 3.) When issuing a warrant the magistrate must be satisfied that "there is probable cause to believe" that grounds for the search exist. (Pen. Code, § 1528.)

Illustrative of the treatment of this question when an arrest

has been made without a warrant, is *People* v. *King,* 140 Cal. App.2d 1 [294 P.2d 972]. In overruling the contention that the information received by the arresting officer from a confidential informant was *inadmissible* hearsay, the court said: ''In each of the instances objected to by the appellant the extrajudicial statements were offered in evidence not to prove the truth of the matter asserted, but to establish probable cause to effect the search and seizure. The truth of the information given to Officer Gardner was not in issue, nor was it offered in evidence to prove any element of the offense against the appellant. The evidence in question was offered solely to establish that the officer had reasonable or probable cause to effect the search and seizure. We believe the testimony was admissible, and as such was properly received in evidence.

''It is set forth in 6 Wigmore on Evidence, third edition, section 1766, pages 177-178, among other things, the following:

'' 'The theory of the Hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule.

. . . . . . . . . . . . . .

'' 'The prohibition of the Hearsay rule, then, *does not apply to all words or utterances merely as such.* If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.'*

''Also in section 1789 of Wigmore (*supra*), where it is stated, at page 235:

'' 'Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned.'

"It is settled that reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would necessarily be admissible at the trial on the issue of guilt." (Pp. 5-6.)

In the instant case it developed upon cross-examination of Officer Lamport at the preliminary hearing that the information set forth in the affidavit for the warrant was obtained from various sources. He testified that he received some of the information from his chief, Keith Sorenson, the district attorney of the county, some from Inspector Zachary Whitten of the district attorney's office, some from special agents Les Jacobs and Norman Hemphill of the United States Treasury Intelligence Unit and certain unnamed agents working under the supervision of Jacobs and Hemphill. Some, at least, of the information received from the federal agents was given by them to Mr. Sorenson who relayed it to the affiant. Lamport indicated upon the witness stand which of the various facts stated in his affidavit he received from these several sources. The expression "reliable persons," as used in the affidavit, he said had reference to Jacobs, Hemphill, Sorenson and Whitten.

He ascertained from the telephone company the information concerning the telephone installations and numbers. The record of arrests and other similar data concerning the defendants, he obtained from the Department of Criminal Identification at Sacramento.

In short, he investigated the situation, tapping the various sources of information indicated, and put the results of his investigation into the affidavit. He was an experienced investigator, having been engaged in police work for 18 years, and had investigated approximately 500 bookmaking cases. The magistrate had good reason to believe the affiant and to conclude that the information was reliable.

The defendants contend that it was improper for the affiant to present to the magistrate any information that did not come to the affiant immediately and directly from persons who had observed the facts narrated by them; e.g., that information which the special agents gave to Sorenson and he relayed to the affiant was incompetent and inadmissible. The answer is furnished by the decision in *People* v. *Hood,* 150 Cal.App.2d 197 [309 P.2d 856]. There, a state parole officer received certain information concerning Hood, from one of her parolees whom she deemed trustworthy because information previously received had proved accurate. This

officer passed the information along to a state supervising parole officer who in turn relayed it to a city police department. An officer of that department used the information in arresting defendant Hood and searching his apartment. The court held that the information which thus originated from a reliable source did not lose its reliability by passing through official channels. Similarly, in the instant case, the information originated from reliable sources and came to Investigator Lamport through official channels.

We conclude that the hearsay appearing in the affidavit involved in the instant case is permissible under California law and furnished proper support for the finding of probable cause made by the magistrate when he issued the search warrant. It appears that there are federal authorities which do not sanction the issuance of a search warrant upon hearsay evidence in a federal case, but we are here dealing with a rule of evidence in our state courts. A federal question is not presented. (See *People* v. *Cahan,* 44 Cal.2d 434, 442, 450-451 [282 P.2d 905, 50 A.L.R.2d 513]; *People* v. *Acosta, supra,* 142 Cal.App.2d 59, 63.)

The alternative writ is discharged and the application for a peremptory writ of prohibition is denied.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied October 11, 1957, and petitioners' application for a hearing by the Supreme Court was denied November 5, 1957. Carter, J., was of the opinion that the petition should be granted.