[Crim. No. 1368. Fourth Dist. Sept. 15, 1958.]

THE PEOPLE, Respondent, v. DONNA MAE PHILLIPS, Appellant.

Thomas Whelan for Appellant.

Edmund G. Brown, Attorney General, and Norman B. Peek, Deputy Attorney General, for Respondent.

McCABE, J. pro tem.*—From judgments of conviction entered after verdicts of a jury for violation of section 337a, subdivisions 1 and 2, Penal Code, and from the order denying a new trial, defendant appeals.

 A police officer had received information concerning bookmaking operations at 717 El Cajon Boulevard, City of El Cajon. An affidavit of a police officer was sworn to before a magistrate of the municipal court and a search warrant was issued on August 3, 1957, which read in part:

"You Are Commanded, in the daytime or nighttime to make immediate search on the premises of Jack L. Thompson, 717 El Cajon Boulevard, El Cajon, California, for the following property, to wit: books, papers or paraphernalia,"

and a police officer testified that the warrant also provided "for the purpose of recording and registering bets on horse races." On August 4, at about 2 p. m. police officers, with the search warrant, went to the house at the El Cajon address. Just prior to going to this address, the officers had a part-time matron place a telephone call to the house, a woman's voice answered "Roger," the matron said "Hi Mabel," the woman's voice replied "This isn't Mabel; there is no Mabel here." Later the matron identified defendant's voice as being the same the matron had heard over the telephone.

Upon arriving at 717 El Cajon Boulevard two officers went to the front door and two officers proceeded to the rear of the house. Although the officers at the locked front door demanded admission, no one admitted them. The officers in the rear of the house entered by a window and the other officers were admitted by their brother officers through the front door. Officers entered a room described as a "bed room" but which in fact was not furnished as such. No other room in the house was furnished for living quarters and no clothing was found. In this "bed room" defendant was seated at a table on which rested two telephone instruments. On this table and about the room the officers observed pads of paper, racing forms, radio and other paraphernalia which was testified to, and the defendant does not deny, is commonly used in bookmaking. Defendant was placed under arrest. While in the "bed room" two police matrons received numerous tele-

*Assigned by Chairman of Judicial Council.

phone calls. In answering telephone calls, the matrons used the introductory word "Roger." These calls concerned themselves with the placing of bets, the "scratching" of bets, the request for information regarding races, or horses or race tracks. In at least one or two incidences inquiry was made for "Donna," defendant's given first name.

From the time of her arrest, defendant refused to give any statement, however at different times and in different locations the following occurred: The arresting officer said "Then you are making the book?" to which defendant replied "That's about it." Upon being asked how she had gotten into this she replied she was well paid; she was asked "if there were any prearranged agreements in case she was arrested and she said no"; when questioned if she knew what she was getting into when she started she replied she did but didn't realize it was that big; she was told that "her country boy" had called and defendant laughed; ("country boy" referred to above was the name given by the calling party in a telephone conversation received by one of the police matrons); defendant questioned the part-time police matron as to whether it was she who called prior to the arrest and the police matron replied in the affirmative.

One of the telephones was subscribed to by one Rogers and the other by one Thompson. The utilities for the house were under the name Thompson. This was known to the police officer prior to swearing to the affidavit. Who rented the house from the owner is not clear from the record. No police officer who testified at the trial knew or had ever seen Thompson or Rogers, and had not known defendant prior to the entry. In the mail box the officers found an envelope addressed to Rogers.

It appears from the testimony that an inventory of the premises was taken while the officers were at the house but not in the presence of defendant. Defendant never received a copy of the inventory. The warrant and inventory were filed on August 9, 1957, in the municipal court.

On the day of trial in the trial judge's chambers defendant revealed to the judge and prosecution the objections she had to the admission into evidence of the property taken. During the trial, the affidavit, search warrant and property taken were admitted into evidence, and the objections to the admissibility of the evidence as revealed in the judge's chambers were noted in the record. Essentially these objections are now translated into the contentions on this appeal.

On this appeal defendant contends (1) the search was illegal because the search warrant was issued improperly and not made upon any factual information in the hands of the officers; (2) the search and seizure was not made under the authority of the search warrant and was therefore illegal; (3) the trial court erred in refusing to require the officer to reveal the name of his informant; (4) evidence taken under the search warrant is inadmissible because the statutory requirements regarding the return of the inventory was improperly made; (5) under the search warrant the evidence was improperly admitted because the warrant authorized search of the "premises of Jack L. Thompson at 717 El Cajon Boulevard" and did not authorize the search of any premises at 717 El Cajon Boulevard; (6) the evidence is insufficient to support the verdict and the verdict is against the evidence.

California cases indicate that, if prior to trial, defendant had desired to challenge the validity of the search warrant and the resulting effect of it she could have (a) made a motion to quash it (*People* v. *Berger,* 44 Cal.2d 459, 461 [282 P.2d 509]) ; (b) petition for a writ of mandamus for the return of the property (*People* v. *Berger, supra*) ; (c) made a motion to suppress or exclude the evidence (*People* v. *Alaniz,* [dissenting opinion] 149 Cal.App.2d 560, 571 [309 P.2d 71], citing *United States* v. *Kind,* 87 F.2d 315, 316) ; (d) sought a writ of prohibition (*Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36] ). Also, defendant had certain rights under sections 1539 and 1540, Penal Code, which apparently she did not exercise. Not having pursued her remedy under these code sections she should be precluded from controverting the facts stated in the affidavit. (*Arata* v. *Superior Court,* 153 Cal.App.2d 767 [315 P.2d 473] ; see also *State* v. *Best,* 8 N.J. Misc. 271 [150 A. 44] ; *United States* v. *McKay,* 2 F.2d 257, 259, 260.) She did not make use of any of these processes prior to trial.

The above quoted portion of the search warrant was read into evidence but the exact verbiage of the affidavit and search warrant is unknown to us since the exhibits are not before us.

On an appeal it is the general rule that matters not shown by the record will not be considered on appeal. (3 Cal. Jur.2d, Appeal and Error, § 261, and cases therein cited.) When there are affidavits which are made the basis of a complaint on appeal they must be part of the record. (3

Cal.Jur.2d, Appeal and Error, § 262 and cases cited.) Therefore, this court will not presume there was error on the part of the magistrate who issued the warrant. The burden is upon the appellant to present a record reflecting the error affirmatively. (*Romine* v. *Cralle,* 80 Cal. 626, 628 [22 P. 296]; *Boyer* v. *Pacific Mutual Life Ins. Co.,* 1 Cal.App. 54, 55 [81 P. 671].) The burden of establishing the invalidity of the search warrant is upon defendant. (*People* v. *Acosta,* 142 Cal.App.2d 59, 62 [298 P.2d 29]; *United States* v. *Goodwin,* 1 F.2d 36.)

If defendant is now making a request to have us attempt to piece together bits of disconnected testimony to establish the contents of the affidavit, she has landed on an unfertile plateau. We will not subscribe to the request, particularly since defendant had methods open to her to make the documents part of the record on appeal.

In part, defendant's argument is that the warrant must be issued only upon "factual information." This point has been determined in *People* v. *Acosta,* 142 Cal.App.2d 59 [298 P.2d 29], and *Arata* v. *Superior Court, supra.*

In sole support of her contention (2) defendant cites without argument *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905]. A perusal of the Cahan case does not reveal that a search warrant was issued. We cannot discern any possible argument whereby the Cahan opinion is applicable to defendant's contention (2).

Defendant's point (3) is based upon a misconception. As heretofore stated, a warrant is presumed to be valid unless the defendant successfully attacks it, which she has not done. Therefore, the police officers in entering the house at 717 El Cajon Boulevard did so armed with a valid search warrant. They were properly in the house to search the premises described in the warrant for the property described in the warrant. In searching the premises they entered a room where bookmaking was taking place and which had in it property similar to that described in the warrant. They had a right to seize this property and to take it with them. The evidence in the record is substantial and justifies a finding that defendant was occupying a room with betting paraphernalia therein and was engaged in bookmaking. The defendant was seated at a table on and around which much of the property used in bookmaking was situated. The officers had a right to believe that crimes under section 337a, subdivisions 1 and 2,

were being committed in their presence. This being true, the officers had a right to arrest defendant, which they did.

During the trial and upon cross-examination of the police officer, defendant asked the following question: "Now, you said you got that information from some reliable source. Would you tell us who the reliable source was?" Prosecution's objection to this question was sustained by the trial court. Defendant can gain no comfort from the fact that in many cases, both in California and in other jurisdictions, an arrest being made upon information supplied by a tipster without other showing, it is decided that the officers did not have reasonable grounds for the arrest. In those cases the crime not being committed in the presence of the officers the question is as to whether the officers had reasonable and probable cause to make the arrest under a felony charge. Defendant has confused the "reasonable cause" to justify an arrest based upon information obtained from others and the "probable cause" for the issuance of a search warrant. In *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36], cited by defendant to support her contention, it is said:

"Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency (see *People* v. *Kilvington,* 104 Cal. 86, 92-93 [37 P. 799, 43 Am.St.Rep. 73]), an arrest may not be based solely on such information. (*United States* v. *Kind,* 87 F.2d 315, 316; *United States* v. *Blich,* 45 F.2d 627, 629; *United States* v. *Keown,* 19 F. Supp. 639, 646; *State* v. *Arregui,* 44 Idaho 43 [254 P. 788, 793-794, 52 A.L.R. 463]; *Hill* v. *State,* 151 Miss. 518 [118 So. 539, 540]; *Smith* v. *State,* 169 Tenn. 633 [90 S.W.2d 523, 524]), and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. (See *People* v. *Boyles, supra,* 45 Cal.2d 652, 656 [290 P.2d 535].) In some cases the identity of, or past experience with, the informer may provide such evidence (See *Aitken* v. *White,* 93 Cal.App. 2d 134, 145 [208 P.2d 788]), and in others it may be supplied by similar information from other sources or by the personal observations of the police."

The Willson case, *supra,* did not concern itself with the "probable cause" for the issuance of a search warrant. In the instant case, the court's ruling not requiring the officer to reveal the name of the informant was correct because a crime was being committed in the presence of the officers who

were legally on the premises. In making this arrest they were not relying upon any information supplied by an informant.

■ By contention (4) defendant seeks to exclude certain evidence obtained by use of the search warrant. We have decided the search warrant was a valid instrument capable of being used by the officers for the purposes described in it. Defendant contends because the inventory was not taken in her presence and no copy of it was given to her, the warrant is vitiated. No California cases are cited by the defendant to support the position, and we have found none. However, cases from without this jurisdiction have held under a statute very similar to section 1535, Penal Code, that the required act by the officer was a ministerial one and created a defect, but did not void the effectiveness of the warrant or contaminate the evidentiary value of the property seized under the warrant. See 79 Corpus Juris Secundum, Searches and Seizures, section 84; *Giles* v. *United States,* 284 F. 208, 211, 215; *United States* v. *Kaplan,* 286 F. 963; *United States* v. *Callahan,* 17 F.2d 937. We think this is the correct view.

■ We can see no validity to defendant's contention (5). The officers had information regarding the activity of one Jack L. Thompson at 717 El Cajon Boulevard, they knew a telephone was subscribed to by Jack L. Thompson, 717 El Cajon Boulevard, and certain utilities were listed under his name at that address. This was information on which, in part, an affidavit could be made. A warrant could be issued properly in the form set forth, in part, above.

Defendant's contention (6) is intertwined with other contentions. This contention has been fully answered above.

■ Defendant's last point is that the evidence is insufficient to support the verdict and judgment. We have outlined the evidence against defendant. The jury, from the evidence, admissions against interest and the inferences reasonably to be drawn from the evidence, could and did find her guilty of the crimes charged. There is substantial legal evidence to support the verdicts and the judgments. They will not be disturbed on this appeal.

Judgments and order affirmed.

Griffin, P. J., and Mussell, J., concurred.