[Crim. No. 3741. First Dist., Div. One. Apr. 28, 1960.]

THE PEOPLE, Respondent, v. SHIRLEY MAE DOSIER, Appellant.

Carmen J. Dominguez, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

DUNIWAY, J.—Appeal from conviction on two counts of an indictment charging unlawful possession of heroin and of marijuana (Health & Saf. Code, § 11500).

Defendant claims, through court appointed counsel, that the evidence does not sustain the verdict, that the court erred in not permitting her to attack the accuracy of the affidavit on which a search warrant was based, and that the judgment should be reversed because she was not promptly taken before a magistrate. We find no error.

## The Facts

We state the facts in the light most favorable to the verdict, as we are required to do.

At approximately 5 p.m. on May 22, 1959, Lieutenant Mac-Kenzie and Officer Petitt of the San Jose Police Department, accompanied by Agent Ojeda of the State Bureau of Narcotic Enforcement, proceeded by automobile to defendant's apartment in San Jose. Their arrival coincided with that of defendant, whom they approached on the sidewalk. Officer Petitt identified himself and the other men as police officers and handed defendant a warrant authorizing the search of her apartment. Defendant then admitted them with her key.

In a dresser drawer the officers found a bottle containing marijuana seeds. Defendant admitted that the bottle was hers. In a jewelry box atop the dresser they found a small

plastic bottle containing cotton, a hypodermic needle, and an empty bindle paper which contained traces of heroin. Defendant stated that the needle and paper were not hers, but that she had known of their presence and had used the needle. In another drawer of the dresser there was found a coin purse containing two packages of brown cigarette paper, and ownership of these items was also acknowledged by defendant. At the trial defendant testified that she smokes "tailor mades," that is, factory rolled cigarettes. Lieutenant MacKenzie testified that wheat straw paper, such as was found in the purse, is commonly used in the rolling of marijuana cigarettes, and that experience has shown brown rather than white paper to be preferred predominantly for this purpose. The dresser which figured in the discovery of the above items was used by both defendant and her roommate. However, the drawers from which the marijuana and cigarette papers were taken were used only by defendant, and the jewelry box from which the other items were taken belonged to defendant. Defendant and her roommate were then taken by the officers to police headquarters, where they arrived at around 7 p.m. At about 8 p.m., following questioning by Lieutenant MacKenzie, defendant signed a statement wherein she admitted ownership of the marijuana and use of the hypodermic needle, but added that the latter implement was not "actually mine," because "I never bought it." By means of a concealed microphone and recorder the entire interview of the girls was preserved on tape. This tape was played back for the jury, except for portions which defendant's counsel requested to be omitted on the ground of undue repetition, and was introduced into evidence. The reporter did not transcribe the conversations revealed by the tape, but there are frequent references to these matters in later questions and answers which are reproduced in the record. From these references to the tape and other testimony it appears that while Lieutenant MacKenzie was absent from the room, defendant revealed to her roommate the length of time during which defendant had been using narcotics, and described to her the effects of "taking a needle." The needle, she said "just belonged to everybody."

1. *The evidence was sufficient.*

 Defendant's counsel does not question that the narcotics were "legally" in defendant's possession when they were discovered. However, counsel urges, more than possession must be proved if a conviction for possession of narcotics is to stand; it must also be shown that the possessor was cog-

nizant of the narcotic properties of the substance. (*People* v. *Gorg* (1955), 45 Cal.2d 776, 780 [291 P.2d 469]; *People* v. *Winston* (1956), 46 Cal.2d 151, 158-161 [293 P.2d 40].) Defendant testified that she had no knowledge of the existence of the marijuana and heroin discovered by the officers. Pointing to this testimony and ignoring defendant's signed statement and the other admissions which defendant concededly made, counsel argues that if defendant did not know of the existence of these articles, she could not have been aware of their narcotic nature. It is probable, we are told, that one Swanson, who was proved to have been in possession of heroin and who was in the apartment on the night previous to defendant's arrest, left the narcotics in question, and plausible that defendant did not know what he had done.

Counsel's arguments as to probability and plausibility would of course be more properly directed to the jury. Defendant's version of the matter, hardly credible even when one has not heard the tape recording introduced below, presented no more than a conflict in the evidence, the resolution of which does not lie within the province of this court. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) It need scarcely be said that there is adequate evidence that defendant was consciously in possession of substances known by her to be narcotics. (*People* v. *McDaniel,* 154 Cal.App.2d 475, 481 [316 P.2d 660].) *People* v. *Antista,* 129 Cal.App.2d 47 [276 P.2d 177], is not in point. Here there was ample evidence, aside from the mere presence of the narcotics, to show that defendant knew their narcotic character.

2. *The court was correct in not permitting counsel to attack the accuracy of the affidavit supporting the search warrant.*

■■■■ The affidavit stated sufficient facts to justify issuance of the warrant, and counsel does not now seriously contend otherwise. (*People* v. *Acosta,* 142 Cal.App.2d 59, 62-64 [298 P.2d 29]; *Arata* v. *Superior Court,* 153 Cal.App.2d 767, 772-776 [315 P.2d 473].)

Defendant did not attack the search warrant before the issuing magistrate. At the trial her counsel sought to resist the introduction into evidence of the articles found in her apartment, on the grounds that the affidavit upon which the warrant was based contained statements which were untrue, and that the facts asserted in the affidavit were insufficient as a matter of law to show probable cause. The trial court refused to let defendant go behind the face of the warrant,

ruling that an attack on the propriety of issuing a search warrant must be made before the magistrate who issued it.

The Penal Code provides that where the grounds on which the warrant was issued are controverted the issuing magistrate must proceed to take testimony relating to this question (§ 1539), and must cause the property taken under the warrant to be restored to the person from whom it was taken, should it appear that there is no probable cause for believing such grounds exist (§ 1540). ▉ Justice Wood, speaking for this court, pointed out in *Arata* v. *Superior Court*, 153 Cal.App.2d 767, 769-770 [315 P.2d 473], that the issuance of a search warrant is a judicial act, for the review of which only Penal Code sections 1539 and 1540 are specifically provided by law; therefore, he continued, a defendant who fails to avail himself of this remedy should be precluded from later controverting the facts stated in the affidavit upon the basis of which the warrant was issued. This exposition of the law has been adopted by later cases. (*People* v. *Lepur,* 175 Cal. App.2d 798 [346 P.2d 914]; *People* v. *Nelson,* 171 Cal.App. 2d 356, 360 [340 P.2d 718]; *People* v. *Phillips,* 163 Cal.App. 2d 541, 545 [329 P.2d 621]; *People* v. *Thornton,* 161 Cal.App. 2d 718, 721-722 [327 P.2d 161].) ▉ In this state of the law, it is clear that the trial court was correct in refusing to allow defendant's counsel to examine witnesses with regard to the truth of the facts averred in the affidavit.

The suggestion is also made that defendant was unable to challenge the validity of the search warrant prior to trial, because she was not represented by counsel in time to permit this action. However, the clerk's transcript clearly shows that defendant was represented by counsel at a sufficiently early date to allow a proper attack upon the affidavit. Defendant, when she appeared before the magistrate on May 29, 1959, was represented by Mr. Campbell, who continued as her counsel, throughout the remainder of the proceedings below; the case did not come on for trial until July 27, 1959.

3. *The claim that defendant was held incommunicado for a week before being taken before a magistrate does not require a reversal.*

▉ Defendant was booked at the jail on the evening of Friday, May 22, 1959, but she was not taken before a magistrate until the next Friday, May 29, following return of the grand jury indictment on Tuesday evening, May 26. In addition, defendant's counsel, who was precluded by the court from examining witnesses as to the period of defendant's in-

carceration, offered to prove that defendant was held incommunicado during that time.

Section 825 of the Penal Code commands that the defendant be taken before the magistrate within two days after his arrest in any event; section 145 of that code provides that an officer who wilfully violates this commandment is guilty of a misdemeanor. This right is also anchored in the Constitution of this state (Cal. Const., art. I, § 8); the offer of proof was for the purpose of showing that defendant was deprived of this right. And by being detained incommunicado, counsel urges, defendant was also denied the assistance of counsel, which again led to a denial of the rights to a writ of habeas corpus and to release on bail. Counsel asserts that the offer of proof should not have been rejected, as the denial of these rights if proved would vitiate the conviction. She does not say why this result must follow, and cites no authority. As we have seen, defendant procured adequate representation for the trial. Defendant's admissions clearly were made before the period of unlawful detention. (See *Rogers* v. *Superior Court* (1955), 46 Cal.2d 3 [291 P.2d 929].) Counsel does not, and cannot on this record, argue that the trial of this case was affected in any way by these claimed abuses, taken cumulatively or singly. Her argument appears to be that the courts should vindicate these rights by overturning any subsequent conviction of a person to whom such rights have been denied, even though this denial in no way contributed to such conviction. ▉ ''[I]t is not the function of this court to reverse a judgment solely as a rebuke to 'law enforcement' officers for their own lawless acts, and improper administration of law, independent of the trial which resulted in that judgment.'' (*People* v. *Stroble*, 36 Cal.2d 615, 618 [226 P.2d 330].) Defendant's position is foreclosed by the decision in *Rogers* v. *Superior Court, supra*, 46 Cal.2d 3, 9-11. See also *People* v. *Feeley*, 179 Cal.App.2d 100, 105 [3 Cal. Rptr. 529]; *People* v. *Guarino*, 132 Cal.App.2d 554 [282 P.2d 538]; *People* v. *Zammora*, 66 Cal.App.2d 166, 219-224 [152 P.2d 180].

Affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied May 16, 1960.