718

THE PEOPLE, Respondent, v. JAMES THORNTON, JR., Appellant.

Joseph T. Forno for Appellant.

Edmund G. Brown, Attorney General, and Carl Boronkay, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment wherein the defendant was convicted of violating the provisions of subdivision 1, section 337a, Penal Code (bookmaking), and from an order denying motion for a new trial.

In an information filed in Los Angeles County, the defendant was charged in four counts with violation of section 337a, Penal Code, subdivisions 1, 2, 3 and 4, respectively. The cause was submitted upon the transcript of the preliminary hearing and additional evidence introduced at the time of trial. The defendant was found guilty of the charges set forth in Count 1, and not guilty as to Counts 2, 3 and 4.

A résumé of the facts is as follows: Prior to April 2, 1957, Peter Ellena, Jr., a police officer of Pasadena, received information from a reliable confidential informant that wagers on horse races were being accepted at a residence at 269 South DeLacey Street, Pasadena. On April 2, 1957, the house was placed under surveillance and the officers observed many automobiles arriving at the house between the hours of 10:30 o'clock a. m., and 12:30 o'clock p. m. The occupants of the automobiles would enter the house and then return to their cars in three to five minutes, and then leave the area. They observed also a great deal of "foot traffic." The house was "staked out" the next day, and the officers on that day "observed the same thing."

On April 4, 1957, the officers secured a search warrant. To secure such a warrant one of the officers set forth in an affidavit that on or about the 3d day of April, 1957, the crime of bookmaking, a felony, was committed by Thornton, who then and there had in his possession, with the intent to use as a means of committing a public offense, bookmaking records, markers, bookmaking paraphernalia, etc.; further, that the police department had received information in regard to Thornton, and had, through an agent, placed bets with a person at the 269 South DeLacey Street location; that Thornton had a gambling past and had been known to men in the police department for several years; that there was reasonable cause to believe, and that the affiant did believe that the personal goods and property above referred to were then concealed in the house. There then followed a request for a search warrant for the recovery of said goods and property, and that the same be brought before a magistrate and disposed of according to law.

On the date the warrant was issued the officers entered the premises and found several people there with Thornton. During the time the officers were there several telephone calls were received. The calling parties would ask for "Jimmy" (and it is admitted that the appellant in this case was known as "Jimmy"). In answering the telephone calls, the officer

identified himself to the callers as "Jimmy." Five of the telephone callers hung up, but the sixth caller stated, "Bay Meadows, third, Kid Robin, two to win, this is Jimmy." One of the officers found National Daily Reporter, dated April 4, 1957, crumpled into a tight ball and stuffed between some clothes in a closet on the first floor. Another officer found a copy of the same paper dated March 16, near a telephone extension on the second floor, and he also found a book in which was a piece of paper which was identified as a typical bookmaking record or marker. An expert stated that the National Daily Reporter was used in bookmaking activities.

. Dr. Robert Heller, a dentist, was among those present in the residence when the officers entered. He was using a part of his noon lunch hour to listen to the race results over the radio, and in talking with Thornton. In answer to a question as to whether he had any business dealings with Thornton on April 4, 1957, he stated that he had "placed a bet on a horse" with Thornton. At the time of the trial he could not remember the name of the horse or the track where the race in question was being run; however, he did state that he would have remembered such on April 4, 1957, had he been asked the name of the horse and the race track on that date.

. Thornton was taken into custody on April 8, 1957, pursuant to a warrant. At the police station he was asked to explain his activities, if he was a bookmaker, and an officer testified that he stated in substance, "That he accepts the wagers at his location by phone and in person. In other words, people coming to his house. He immediately destroys any evidence and phones them to Los Angeles to the bookmaker.

"He tries his best to keep the bets at least to a five to ten dollar level to make it worth the bookmaker's time in Los Angeles. to make the trip over here to collect and pay off and get the money and to pay off the winners.

.. "The bookmaker in Los Angeles gives the defendant the money to pay off the people that have placed wagers at 269 South De Lacey. In odds, Mr. Thornton told me that the bookmaker pays off 60 to 2 for the first five, 30 to 2 for the second five; that he accepts bets from possibly 12 to 15 people and always forwards it to the same person in Los Angeles who he considers a reliable person who always pays off and is trusted."

·· Appellant contends that the court erred as a matter of law in upholding the validity of the search warrant, and in permitting the introduction of the evidence seized; that the court

erred in refusing to require the officer to disclose the name of the informer, or the name of the agent through whom the informer allegedly placed bets with the defendant, and that the evidence is insufficient as a matter of law to sustain the judgment.

A reading of the affidavit for the search warrant convinces us that under the circumstances it was sufficient upon which to issue the warrant. ▇▇ As succinctly stated in *Arata* v. *Superior Court,* 153 Cal.App.2d 767, at pages 769-770 [315 P.2d 473]:

"We must bear in mind, of course, that the issuance of a search warrant is a judicial act. A warrant may be issued only upon 'probable cause, supported by oath or affirmation' (Const., art. I, § 19; Pen. Code, § 1525) by a 'magistrate (Pen. Code, § 1523) who must examine on oath the plaintiff and any witnesses he may produce and take their depositions' (§ 1526) and thereupon be 'satisfied of the existence of the grounds (see § 1524) of the application, or that there is probable cause to believe their existence' (§ 1528). See *Mai* v. *State* (1928), 152 Miss. 225 [119 So. 177], and *Sykes* v. *State* (1930), 157 Miss. 600 [128 So. 753]; issuance of search warrant is an adjudication that probable cause exists for the search.)

"The only review of such a judicial act that is specifically provided by law, is the review sanctioned by sections 1539 and 1540 of the Penal Code. 'If the grounds on which the warrant was issued be controverted, he (the magistrate who issued the search warrant) must proceed to take testimony . . .' (§ 1539.) 'If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate (he who issued the warrant) must cause it to be restored to the person from whom it was taken.' (§ 1540.)

"When, as in this case, the defendants fail to pursue this remedy, they should be and, under the circumstances of this case, are precluded from controverting the facts stated in the affidavit upon which the search warrant was based. (Citing cases.) Additionally persuasive of this view is the majority rule that 'apart from governing statutory provisions . . . one against whom a search warrant is directed may not dispute the matters alleged in the verified complaint supporting the warrant.' (5 A.L.R.2d 396. See authorities collected at pages 396-405 of 5 A.L.R.2d, and in 1948-1957 A.L.R.2d Supp. Serv. at p. 270.)"

In the affidavit the offense was specified, the perpetrator thereof was named, the date was set forth, the property used in the crime was described and the other grounds for the search were stated. The magistrate was satisfied of the existence of the grounds for the application, or that there was probable cause to believe their existence. (See *People* v. *Acosta,* 142 Cal.App.2d 59 [298 P.2d 29].)

A thorough reading of the reporter's transcript leads us to the conclusion that the confidential informant in this matter was neither a participant in, nor a witness to, the crimes with which the appellant was charged. The informant gave information to the police, which resulted in their investigation, and the later securing of the search warrant. The court did not have to rely upon the informant to establish Thornton's guilt. Under such circumstances the prosecution is not required to disgorge the name of the informant (*People* v. *Gonzales,* 141 Cal.App.2d 604, 607 [297 P.2d 50] ; *People* v. *Wasco,* 153 Cal.App.2d 485, 488 [314 P.2d 558] ; *People* v. *Moore,* 154 Cal.App.2d 43, 46 [315 P.2d 357] ; *People* v. *Salcido,* 154 Cal.App.2d 520, 522 [316 P.2d 639].)

As to the assertion that the evidence was inadequate to support the judgment, we have heretofore set forth enough of the uncontradicted evidence to show that there is no merit to such contention.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.