[Crim. No. 9772.   Second Dist., Div. Two.   Apr. 7, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLENE PETERSON et al., Defendants and Appellants.

George L. Vaughn, Jr., for Defendants and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, Gilbert F. Nelson, Deputy Attorney General, Evelle J. Younger, District Attorney, and Harry B. Sondheim, Deputy District Attorney, for Plaintiff and Respondent.

HERNDON, J.—Defendants appeal from the judgments of conviction entered against them following a jury trial in which they were charged with the crime of possessing heroin for purposes of sale in violation of section 11500.5 of the Health and Safety Code.

Both appellants assign as error, requiring reversal of the judgments, the failure and refusal of the courts below to permit them to controvert the facts relied upon by the prosecution to justify the issuance of the search warrant used to obtain the incriminating evidence which was used against them.[1] We have concluded that this contention is meritorious.

---

[1] Section 1539 of the Penal Code reads as follows: "If the grounds on which the warrant was issued be controverted, he must proceed to take testimony in relation thereto, and the testimony of each witness must be reduced to writing and authenticated in the manner prescribed in section eight hundred and sixty-nine."

Section 1540 of the Penal Code reads as follows: "If it appears that the property taken is not the same as that described in the warrant,

The evidence bearing upon this issue may be summarized as follows: On May 31, 1963, officers of the Los Angeles Police Department obtained a search warrant from Municipal Court Judge James D. Tante authorizing them to search the person of the appellant Charlene Peterson as well as her residence and automobile, each of which was specifically identified therein.

Officer James Grennan of the Los Angeles Police Department testified that on June 8, 1963, in executing this warrant, appellant Peterson's residence was placed under surveillance. This officer further testified that when appellant Peterson was seen to leave the house and drive off in a different vehicle she was immediately pursued and overtaken. It would seem clear from this testimony that her actions at this point were evasive in nature and provided a valid basis for the inference which the prosecution relied upon in the court below as constituting a sufficient justification for immediately placing her under arrest and searching the automobile which she was driving, although it was not the one described in their warrant. A large quantity of narcotics was found therein.

We need not pass upon this question, however, for clearly it is irrelevant to the issue raised by appellants, namely, were they erroneously denied their right to challenge the propriety of the issuance of *the warrant itself?* It is unmistakably clear from the record that the officers' sole purpose in pursuing, overtaking and restraining appellant Peterson at this particular time and place was their entirely proper determination to execute the search warrant theretofore issued. Whatever occurrences developed during the fulfillment of this proper objective obviously had no bearing upon the question of the correctness of the issuance of the warrant itself.

This factual aspect of the case is made even more apparent by the testimony of Officer Grennan's partner, Officer John Hanks. He testified that when he reached the position where appellant Peterson stopped her car ". . . Sergeant Grennan's vehicle was alongside the defendant's vehicle, and they were both stopped. Sergeant Grennan was alighting from the car." The following questions and answers were then recorded:

"Q. And what was the next thing that occurred? A. I had a very brief conversation with Sergeant Grennan, at which time myself and the two officer[s] in the vehicle with me pro-

or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause it to be restored to the person from whom it was taken."

ceeded to the address at 240 West 113th Street. Q. When you got to—excuse me—when you got to that address, at 240 West 113th Street, what was it that you did then? A. Entered the residence. Q. And was that pursuant to the search warrant you had? A. Yes, sir.''

Officer Hanks testified that upon entering the residence he met the appellant Wilson who was unknown to him at that time. The officer showed Wilson the search warrant and then proceeded to search the premises. Further large quantities of heroin were discovered.

It is therefore indisputable that the question whether any of the contraband should have been received in evidence against appellants could only be answered by an appropriate resolution of their challenge to the validity of the search warrant theretofore issued. Their attempt to obtain such a determination was effectively blocked in every proceeding below by means of a series of circuitous procedural objections.

The applicable rules governing the issuance of search warrants and subsequent challenges thereto were spelled out at length in *People* v. *Keener,* 55 Cal.2d 714, 719, et seq. [12 Cal. Rptr. 859, 361 P.2d 587], a case arising by way of an appeal by the People from the order of the superior court setting aside an information upon motion made under section 995 of the Penal Code. ▮ It was therein stated:

''A search warrant may be issued by a magistrate only upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property to be seized and the place to be searched. (Cal. Const., art. I, § 19; Pen. Code, §§ 1523, 1525.) If the magistrate is satisfied of the existence of the grounds for the application or that there is probable cause to believe their existence, he must issue the warrant to a peace officer commanding him to search the person and place named for the property specified. (Pen. Code, § 1528.) After the search the officer executing the warrant must return it to the magistrate with a written inventory verified by affidavit. (Pen. Code, § 1537.) Sections 1539 and 1540 of the Penal Code provide that, where the grounds for issuance of the warrant are controverted, a hearing shall be held and that, if it is found that there is no probable cause for believing the grounds on which the warrant was issued, the magistrate must restore the property to the person from whom it was taken.

''The People take the position that the refusal of the magistrate to quash the search warrant was conclusive as to the

validity of the warrant and, therefore, that the evidence obtained by the search was properly admitted at the preliminary hearing. It has been held that where a search warrant is valid on its face and the defendant seeks to attack the truth of statements in the supporting affidavit, he must proceed under sections 1539 and 1540 of the Penal Code and that, if he does not avail himself of this remedy, the facts upon which the warrant was issued may not be controverted at a preliminary hearing, at a hearing of a motion under section 995, or at a trial. (*People* v. *Dosier,* 180 Cal.App.2d 436, 440 [4 Cal.Rptr. 309]; *People* v. *Lepur,* 175 Cal.App.2d 798, 801-802 [346 P.2d 914]; *People* v. *Nelson,* 171 Cal.App.2d 356, 360 [340 P.2d 718]; *People* v. *Phillips,* 163 Cal.App.2d 541, 545 [329 P.2d 621]; *People* v. *Thornton,* 161 Cal.App.2d 718, 721-722 [327 P.2d 161]; *Arata* v. *Superior Court,* 153 Cal.App.2d 767, 769-775 [315 P.2d 473].) As we have seen, however, the defendants involved in this case did apply to the magistrate for relief; their motion to quash the warrant for lack of probable cause, while not specifically asking for return of the seized property, was broad enough to include the grounds for relief set forth in sections 1539 and 1540; and during the hearing upon that motion they requested the name of the informant.

"The ruling of the magistrate in denying the motion to quash should not be treated as final and conclusive with respect to defendants' right to attack the warrant for lack of probable cause. ▮ Section 1466 of the Penal Code, which sets forth the decisions of an inferior court from which an appeal may be taken in a criminal case, does not authorize an appeal from an order made under sections 1539 and 1540 or from a denial of a motion to quash a warrant, nor does any other provision allow such an appeal, and, under the general rule, an order is not appealable unless declared to be so by the Constitution or by statute. (*People* v. *Valenti,* 49 Cal.2d 199, 204 et seq. [316 P.2d 633]; cf. *Collins* v. *Corse,* 8 Cal.2d 123, 124 [64 P.2d 137]; *Weiss* v. *Garofalo,* 89 Cal.App.2d 811 [201 P.2d 845]; see 3 Witkin, California Procedure (1954) p. 2150.) ▮ A defendant's failure to seek an extraordinary writ such as mandamus or prohibition, where available, as a means of obtaining relief from an erroneous decision upon proceedings under sections 1539 and 1540 likewise should not be deemed a waiver of his right to attack the warrant for lack of probable cause when the prosecution at the preliminary hearing seeks to introduce evidence discovered upon the

asserted illegal search. Defendants, prior to the preliminary hearing, did all that could reasonably be expected of them to preserve their rights, and, under these circumstances, the adverse ruling upon the motion to quash the warrant did not preclude them from subsequently raising at the preliminary hearing their claim that the warrant was defective.''

In the instant case, appellants' counsel first mistakenly sought to challenge the grounds upon which the search warrant had issued at the time of their preliminary hearing. This effort was met by the following objection: ''Mr. Yanz: [Deputy District Attorney] Objection, Your Honor, this is again beyond the scope of the direct, and the probable cause. Again, we were relying on the two named informants, rather than the two unnamed informants, and *the time to attack the search warrant is before the Municipal Court Judge who issued the search warrant, not in this court.* THE COURT: Objection sustained.'' (Italics added.)

We may assume that in making this ruling, the magistrate had in mind the following rule: ''The only review of such a judicial act [the issuance of a search warrant] that is specifically provided by law, is the review sanctioned by sections 1539 and 1540 of the Penal Code.'' (*Arata* v. *Superior Court,* 153 Cal.App.2d 767, 770 [315 P.2d 473].) That is, assuming that the magistrate who issued the warrant is still available to conduct such a hearing, compliance with the requirements of these sections relating to the hearing being conducted by such magistrate ordinarily would not necessitate converting the preliminary hearing or the trial into a substitute or alternative form of initial review. (*People* v. *Keener, supra,* 55 Cal.2d 714, 719.)

However, as will hereafter be more fully discussed, rather than summarily disposing of appellants' attempted attack upon the facts underlying the issuance of the search warrant, the committing magistrate more realistically and more appropriately might have required appellants to elect between other procedural methods. That is to say, appellants might have accepted a continuance of the preliminary hearing for the purpose of pursuing their rights under sections 1539, 1540 of the Penal Code, or they might have agreed to allow the magistrate conducting the preliminary hearing to pursue the inquiry provided for by these sections although he was not the magistrate who actually caused the challenged search warrant to issue.

Although a ''magistrate'' may be a justice of the

Supreme Court or of the District Court of Appeal or a judge of the superior court or the municipal or justice court (Pen. Code, § 808), in the usual case, and in the instant case, the two judges would be members of the same court.[2] Therefore, if a defendant wishes to allow the committing magistrate to conduct the hearing provided for by sections 1539, 1540 of the Penal Code, such procedure would appear to protect all his rights in the premises and simplify the inherently redundant and time-consuming process of conducting two separate, but essentially bifurcated, hearings.

Thereafter, appellant Wilson sought by motion made under section 995 of the Penal Code to have the information set aside on the ground that the evidence, even as offered and received at the preliminary hearing, was legally insufficient as to him. This motion was denied and his subsequent petition for a writ of prohibition was denied by the Supreme Court on August 28, 1963.

Apparently it was the time consumed in these legally permissible procedures invoked by appellant Wilson to test the sufficiency of the evidence that caused him to delay his later attacks upon the search warrant itself. That is, if he had been successful in his attempt to convince the magistrate that the evidence offered against him at the preliminary hearing was not sufficient to justify holding him to answer on the charge, then obviously it would have been wholly immaterial to him whether or not the evidence had been improperly obtained. He denied all ownership or any connection with the contraband, and having failed in his effort to challenge the affidavit supporting the search warrant during the preliminary hearing, there was no reason for him to pursue this challenge further pending a ruling on his principal contention.

In any event, appellant Peterson was not involved in this proceeding seeking a writ of prohibition and no issue was raised therein regarding the propriety of issuing the search warrant itself. Of course, and in any event, no such issue could have been successfully raised therein under the rule of the *Arata* case heretofore discussed, for, in the instant case, the requirements for the proceeding for review as provided by sections 1539 and 1540 of the Penal Code had not been fulfilled prior to the preliminary hearing.

Following the denial of appellant Wilson's application for

---

[2] Since the trial of this cause, Judge Tante has been elevated to the Superior Court of Los Angeles County.

the writ of prohibition, both appellants sought to obtain the judicial review provided by sections 1539 and 1540 by noticing a motion therefor before Judge James D. Tante who had issued the search warrant. Following a continuance, the matter came on for hearing on October 25, 1963. The People opposed any hearing on the matter on three grounds. They first cited the following language from the decision in *People* v. *Keener, supra,* 55 Cal.2d 714, 719:

''It has been held that where a search warrant is valid on its face and the defendant seeks to attack the truth of statements in the supporting affidavit, he must proceed under sections 1539 and 1540 of the Penal Code and that, if he does not avail himself of this remedy, the facts upon which the warrant was issued may not be controverted at a preliminary hearing, at a hearing of a motion under section 995, or at a trial. [Citations.]''

Although the foregoing statement obviously was made in reference to the question whether an adverse ruling by a magistrate against a defendant who has made such a challenge is or is not conclusive when thereafter the evidence is offered at the preliminary hearing, the People argued therefrom that a rule had been promulgated which required that this challenge always and necessarily must be made *before* the preliminary hearing and that if it is not so made the right thereto is irrevocably forfeited. We find no merit in this contention.

Clearly, the court in *Keener* was not considering the question as to *when* the hearing under sections 1539 and 1540 must be sought in all instances. Moreover, the several decisions cited following the quoted sentence indicate that a requirement such as that suggested by the People has never been demanded or declared to be essential. In fact, in *People* v. *Dosier,* 180 Cal.App.2d 436 [4 Cal.Rptr. 309], the first case cited by the court in *Keener* in support of the above quoted sentence, the appellant *never* would have been able to challenge the warrant under such a rule because the grand jury indictment against her was returned four days after the warrant was executed and for that reason no preliminary hearing was ever held. Further, in the *Dosier* decision above cited, the court stated (at p. 440):

''The suggestion is also made that defendant was unable to challenge the validity of the search warrant *prior to trial,* because she was not represented by counsel in time to permit this action. However, the clerk's transcript clearly shows that defendant was represented by counsel at a sufficiently early

date to allow a proper attack upon the affidavit. Defendant, when she appeared before the magistrate on May 29, 1959, was represented by Mr. Campbell, who continued as her counsel, *throughout the remainder of the proceedings below*; the case did not come *on for trial* until July 27, 1959." (Italics added.) See also *People* v. *Phillips, supra,* 163 Cal.App.2d 541, 545.

The People's second contention in opposition to the hearing of the motion noticed pursuant to sections 1539 and 1540 was this: that since the defendant already had been bound over to the superior court, "this court [the magistrate who had issued the search warrant] has no jurisdiction over either the defendant or the evidence." This contention is equally unmeritorious. In *People* v. *Dosier, supra,* 180 Cal.App.2d 436, the filing of the indictment achieved the same result and was not deemed to have been effective to relieve the magistrate issuing the warrant from his duty to fulfill the requirements of sections 1539 and 1540 of the Penal Code.

Finally, the People made the startling argument that since appellants had sought at the preliminary hearing to controvert the grounds upon which the warrant had been issued, which effort was defeated in the manner heretofore set forth, the unavoidable effect of the rulings, made in the course of said preliminary hearing, was to render the issue res judicata against appellants. The deputy district attorney, who represented the People in opposing the granting of the hearing by the magistrate who issued the warrant, stated:

"I submit that this proceeding at the preliminary examination was tantamount to a proceeding under Section 1539 and 1540, at which time the motion to quash was denied."

It is obvious that this position is diametrically opposed to that successfully taken by the deputy district attorney who represented the People at the preliminary hearing when he asserted that the attack upon the verity of the facts contained in the affidavit supporting the warrant must be made "before the Municipal Court Judge who issued the search warrant, not in this court."

The judge who issued the warrant expressly declared his agreement with each of these contentions made by the People and ruled that "the Court denies the motion of the defendant and *refuses to proceed to hear the motion,* and the motion is denied." (Italics added.)

When the case came on for trial, appellants, still seeking to challenge the grounds upon which the search warrant had

issued, were met by a different prosecuting officer who advanced a new contention—one that was at odds both with the facts and with the already mutually inconsistent positions theretofore taken by the prosecution. He asserted: ''It is my impression that it [the motion controverting the grounds upon which the search warrant issued] *was supposed to be handled by the magistrate that issued it. Thereafter it was appealed in this case to the DCA, and the District Court of Appeal, as I understand it, did not quash the search warrant. The matter has been adjudicated* and to my understanding of the case law is not subject to review at the time of trial in the Superior Court.'' (Italics added.)

Appellants' counsel attempted to correct these mistaken factual statements, but without apparent success, for the trial judge eventually denied any motion to quash the warrant, stating: ''Well, as I read these cases, Mr. Vaughn, the testing of the validity of the search warrant should be before the magistrate who issued it, and not before this court. The proceedings must be pursuant to Section 1539 and 1540 of the Penal Code . . . Well, to protect your record, Counsel, *it's the opinion of this court that the motion should not be made in this court.*'' (Italics added.)

The trial court did order that the transcript of the proceedings had before the magistrate who issued the warrant be made part of the record, but apparently still was laboring under a misapprehension as to what had transpired at this earlier hearing. The deputy district attorney, who also opposed the granting of this order for augmentation, stated as follows: ''. . . I object to such a proceeding because my understanding of the law is under the Dozier case, that it has to have been raised, *as it was already raised,* in the Municipal Court and *it was acted upon in that Court,* and I don't think, maybe I'm off base, I don't know, but I don't think it should be again acted upon at this time.'' (Italics added.)

To this statement the court replied: ''Well, if it is not ordinarily part of the record I think it should be. I'm only trying to protect the record in so far as counsel is concerned so that he can see that this is a part of the record if it should be necessary to take an appeal.''[3]

In respondent's brief filed herein, it is conceded that by

---

[3]In fairness to the trial judge and the deputy district attorney who tried the case, it would appear that the transcript of the proceedings had before Judge Tante was not available at the time of trial. However, they were apparently part of the record at the time appellants' motions for new trials were argued and denied.

reason of the actions of the various judges in the courts below, appellants never have been given an opportunity to controvert the grounds on which the warrant was issued. Respondent argues, however, as did the deputy district attorney who successfully prevented a hearing under sections 1539 and 1540, that the case of *People* v. *Keener, supra,* 55 Cal.2d 714, 720, holds that unless such hearing is requested, obtained and conducted prior to the preliminary hearing, the right thereto is forever lost. As previously indicated, we are unable to accept this interpretation of the *Keener* decision.

It is true, of course, that even where a defendant fails to seek a determination under sections 1539 and 1540, he still may attack the affidavit upon which the issuance of the search warrant was based by challenging its sufficiency on its face. However, he may not question the verity of the facts therein set forth. It is likewise true that even constitutionally guaranteed rights may not be used to subvert the orderly and efficient administration of justice and their utilization as tools for dilatory purposes may not be permitted. (Cf. *People* v. *Douglas,* 61 Cal.2d 430, 435 [38 Cal.Rptr. 884, 392 P.2d 964].)

Nevertheless, the constitutional right of citizens to be secure in their persons and residences is a most highly regarded and jealously protected right. It necessarily includes the right to utilize all authorized statutory procedures to subject to full and complete examination those legal processes by which society, acting in pursuit of the general good, authorizes its police arm to invade the individual's personal right to privacy.

Therefore, absent some showing that such a right has been intentionally waived or is clearly being asserted in an unreasonable effort to thwart efficient and orderly judicial procedure, an appropriate time and place for its exercise must be allowed.

In the instant case, no showing whatsoever has been made to indicate that appellants intended to waive their right to inquire into the issuance of the search warrant in the manner authorized by statute when their attorney mistakenly attempted to use the preliminary hearing as the forum for such factual inquiry. In this particular, the language of *Johnson* v. *Zerbst,* 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357], quoted in *People* v. *Douglas, supra,* 61 Cal.2d 430, 434, is apposite: " 'It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not pre-

sume acquiescence in the loss of fundamental rights.'' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.' ''

■ The error of appellants' counsel in his initial attempt to enforce their rights in the wrong court certainly is not indicative of an intentional waiver of those rights. On the contrary, it indicates an intention to protect and enforce them.

But, because of this error, under the strict rules of procedure adopted by the committing magistrate, appellants, by reason of the fact that they had not invoked the procedures provided by sections 1539, 1540 prior to the preliminary hearing, were unable to obtain a review of the verity of factual matters set forth in the affidavit upon which the warrant itself had been issued. Therefore, since appellants did not challenge the sufficiency of the affidavit *on its face*, they were unable to successfully object to the introduction into evidence *at that hearing* of the material seized in the execution of the warrant, nor could they challenge its receipt *in that hearing* by means of a motion under section 995 of the Penal Code nor by application for a writ of prohibition filed in accordance with section 999a of the Penal Code.

■ However, failure to object to the introduction of illegally obtained evidence, or to insist on the enforcement of other constitutional rights, at a preliminary hearing ordinarily does not foreclose the right to object thereto at the time of trial. When it is remembered that a preliminary hearing is merely a modern substitute for the process of indictment by grand jury as the means of instituting a criminal proceeding in the superior court, the reason for this ''separation'' of preliminary hearing and trial is apparent. A proceeding before the grand jury ordinarily does not present an opportunity to interpose any objection to the introduction of evidence until after the indictment has been returned.

In the instant case, it was because of the failure of appellants' counsel to proceed in the authorized fashion prior to the preliminary hearing that thereafter they had no recourse other than to attack the resulting order binding them over to the superior court for trial. Necessarily the only available ground of attack was to question the sufficiency of the evidence rather than to claim error in its receipt. That such limited attack was made and was unsuccessful showed no inclination to waive appellants' rights to proceed in the authorized fashion prior to trial. In fact, this is exactly what was done when a hearing before the magistrate who issued the warrant was sought after

the proceedings under sections 995 and 999a had proved ineffective.

As heretofore indicated, respondent is unable to offer any reason why this hearing should not have been granted except the categorical assertion, which we have already found lacking in reason or precedent, to the effect that such hearing must always precede the preliminary hearing or be forever lost. No reason is suggested for imposing such a narrow limitation upon a statutory right, nor is any policy consideration offered that would demand such unseemly insistence on speed and the strict enforcement of an "order of procedure" whose origin is nowhere to be found in statute or case law.

Respondent does cite *Aday* v. *Superior Court*, 55 Cal.2d 789, 800 [13 Cal.Rptr. 415, 362 P.2d 47], for the proposition that "[t]he purpose of sections 1539 and 1540 is to provide one whose property is seized with a speedy remedy in a readily accessible court, . . ." However, this statement was made in reference to the question whether a seizure under a warrant constituted a previous restraint violating the constitutional guaranty of free speech and press, and clearly is not authority for the proposition that this remedy must be regarded as forfeited and forever lost unless it is exercised in some specific "speedy" fashion. In fact, it was held in the *Aday* case that the right to proceed under these sections was not lost even though the property taken under the warrant had been transferred to the jurisdiction of a superior court in another county.

We do not intend by the foregoing processes of reasoning, or by any statement herein made, to lay down any rule of law which would clothe a defendant's right to a hearing under Penal Code sections 1539, 1540 with immunity from the power of the respective lower courts to impose any reasonable regulations or controls properly designed to thwart tardy or censurable assertions of the right made merely to accomplish delay or to interfere with the orderly processes of the law.

In almost every conceivable instance, both the prosecution and the defense will know, prior to the setting of a date for the preliminary hearing, whether a search warrant was or was not used to obtain evidence material to the offense charged. Therefore, appropriate arrangements for the conduct of a 1539-1540 proceeding prior to the preliminary hearing may be made without any objectionable delay or any procedural difficulty. Further, upon learning that a search warrant *has* been used but that no 1539-1540 hearing

has been held, in an appropriate case the magistrate conducting a preliminary hearing might very properly require the defendant to elect whether to proceed, expressly waiving his right to such a hearing, or to agree that the committing magistrate might himself conduct the 1539-1540 hearing rather than the issuing magistrate, or to agree to a suitable continuance of the preliminary hearing for the purpose of allowing the issuing magistrate to conduct such a hearing.

Such a procedure in the usual case would protect the rights of the accused and also avoid the possibility that the time and expense incurred by reason of the holding of the preliminary hearing prior to a 1539-1540 hearing might later prove to have been unnecessary. ■ A similar procedure could be followed in the superior court in cases in which the prosecution is initiated by way of an indictment rather than by the filing of an information. ■ Additionally, in cases where it is manifestly apparent that the belated effort to exercise the statutory procedures is solely dilatory in nature, the trial court still will retain its inherent power to make any orders necessary to its efficient operation.

■ In the unlikely event that, despite our decision herein, a magistrate in the future should wrongly refuse to conduct a 1539-1540 hearing properly sought by a defendant at a reasonable time before the date of trial and the defendant should fail to advise the trial court of this fact until after a jury has been impaneled, the trial court still will be vested with a broad discretion to determine the reasonable disposition that should be made with respect to any tardy or inappropriate assertion of the right. It is clear, however, that no such discretion was exercised in the instant case.

■ It is to be remembered that this case does not involve any failure on the part of the defense in a proper and timely manner to invoke their right to the hearing provided by sections 1539, 1540. Therefore, the ultimate controlling factor is not *which* judicial forum might have granted appellants' request to challenge the search warrant but rather that *some* opportunity for direct challenge ultimately should have been granted to them. We think it unnecessary further to stress the fact that we are not dealing here with what might be termed mere formalisms of procedure. We are dealing with the problem of vindicating very substantial rights.

We have attempted herein to lay down definite guide lines for the use of both the defense and the prosecution in any future cases involving the use of search warrants which, it reasonably may be anticipated, will be presented in ever-

increasing numbers. We have indicated that, in our view, since the appellants' counsel in the instant case had failed to seek a 1539-1540 hearing prior to the preliminary hearing, it would have been entirely appropriate for the committing magistrate, with appellants' consent, to have heard such challenge then and there, or to have granted a continuance of the preliminary hearing to permit it to be heard before the magistrate who had issued the warrant. We have indicated that the issuing magistrate definitely should have heard the challenge when properly made before him in advance of the trial. We have indicated that the trial judge also might have conducted such a hearing with appellants' consent or made some other order appropriate in the premises.

However, in the instant case, the committing magistrate refused to conduct such a hearing, apparently believing that he had no power so to do even at appellants' request. The magistrate who issued the warrant thereafter refused to conduct such a hearing, apparently believing either that he had lost jurisdiction so to do or that an equivalent challenge had been heard and disposed of at the preliminary hearing. The trial court refused to conduct such a hearing because the prosecution mistakenly advised the court that a 1539-1540 hearing had, in fact, already been held before the issuing magistrate and that his ruling had been upheld by the appellate courts. In such a posture, the issue is not one of form but rather of totally depriving citizens of the only method provided by California procedure for challenging an invasion of their persons and residences.

In these circumstances, we cannot properly sanction another denial of appellants' rights under the guise of weighing such testimony as was produced in connection with another subject matter and concluding that undoubtedly appellants would have been unsuccessful in their challenge even if they had been allowed to present it. As we have previously indicated, the only question passed upon by the trial court was whether or not the police had acted properly in searching the car driven by appellant Peterson, although it was not the one named in the warrant. To answer this question, it was necessary only to establish that the police had the right to order her to stop her car, for then her evasive conduct in her apparent attempt to avoid compliance with this order would amply justify her arrest and a search of the car. Perhaps the information in the possession of the police would have been sufficient to justify their actions even in the absence of a

search warrant, but clearly the prosecution was not relying solely upon this fact nor did the ruling of the trial court so specify.

In his argument preceding the court's ruling on this subject, the prosecuting attorney concluded with the following statement:

"This [information in the possession of the police] *was all made clear in the search warrant and the Court did issue a search warrant,* certainly, for the house and her own car. In addition to that, the officers told of the actions of the defendant when she was driving. One officer, Officer Hanks, attempted to pull her over. She evaded his automobile. The other car blocked her position, the other police car, by Grennan, and yet instead of stopping she turned down the alley and it was necessary for Officer Grennan to follow her. And then in the alley he saw the things that you have heard so many times testified to here. I say that information, *the search warrant,* the presumption of the officers, all certainly established probable cause for the stopping of that car and the arrest of the defendant." (Italics added.)

In addition, even if we could properly ignore the fact that the officers concededly were relying on their right to execute the warrant when they pursued appellant Peterson's car, still we would have nothing except the warrant to justify the search of her home which led to the discovery of appellant Wilson and the bulk of the contraband, since this search was not incident to her arrest in the car. (*People* v. *Cruz,* 61 Cal.2d 861, 865-866 [40 Cal.Rptr. 841, 395 P.2d 889].)

Since, for the reasons above stated, a reversal is unavoidable, it becomes unnecessary for us to discuss or decide the further serious questions which are posed by the contention of appellants that a reversal is dictated by the law as recently enunciated in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The statements of appellant Peterson which were received in evidence appear to be pragmatically tantamount to a confession and apparently were made under conditions meeting all the requirements established in *Dorado* (see pp. 353-354).

However, since the case was tried prior to this decision, the record, quite naturally, is very terse and rather indefinite with respect to aspects of the case which now have become vital in the application of these new rules. (Cf. *People* v. *Dorado, supra,* pages 354, 356; *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal Rptr. 201, 400 P.2d 97].) It may reasonably be assumed, we think, that these uncertain elements will be more ade-

quately developed and clarified both by the prosecution and by the defense in the course of the further proceedings to be had in this cause.

The judgments are reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Roth, P. J., concurred.

FLEMING, J., Dissenting.—The court reverses the convictions of defendants, caught red-handed with large quantities of pure heroin held for purposes of sale in amounts said to have a retail value of one million dollars, on what appear to me formalistic grounds empty of real content. The convictions must be reversed, the court rules, because defendants were denied their opportunity to challenge the existence of probable cause for the issuance of the search warrant used to unearth the main supply of heroin.

I

The history of this matter falls into stages somewhat as follows:

1. On June 8, 1963, defendant Charlene Peterson was arrested while driving a Chevrolet automobile owned by defendant Dewey Wilson. On her arrest the Chevrolet automobile was searched, and 2 ounces of pure, undiluted heroin were found underneath the driver's seat. This search was deemed to have been made without a warrant.

2. Immediately thereafter the police returned to the house of Charlene Peterson on West 113th Street and conducted a search of the premises under authority of a search warrant which they had previously obtained. Dewey Wilson was in the house. This search uncovered massive amounts of pure, undiluted heroin packaged for ready sale and delivery and a Smith and Wesson revolver. Wilson was arrested, and both defendants were taken to the police station.

3. On the filing of a complaint against Charlene Peterson and Dewey Wilson charging possession of heroin for sale, a preliminary hearing was held in the municipal court on July 2 and 3 before the Honorable O. Benton Worley, during which the defense challenged the arrest of Charlene Peterson and the search of the Chevrolet as having been made without a warrant and without reasonable cause to believe she had committed a felony. A hearing was held on the issue of reasonable cause, and the arresting officer, James Grennan, was questioned at length as to what cause he had had to arrest

Charlene Peterson and search the Chevrolet. He testified the arrest was based on information from two reliable informers, J. D. Walker and David Rogers, information from two untested informers whose names were not disclosed, and his observation of furtive conduct by Charlene Peterson immediately prior to her arrest. At the conclusion of the hearing the court ruled that reasonable cause existed for the arrest and that consequently evidence obtained in the search of the Chevrolet was admissible.

4. During the same preliminary hearing an oral motion was made by defendants to quash the search warrant used to make the search of the premises at West 113th Street, on the ground that the warrant had been issued without probable cause to believe the existence of the grounds on which the warrant was issued. The search warrant had been issued on the petition and affidavit of Officer Grennan, and a comparison of his affidavit with his testimony at the preliminary hearing indicates that the information on which he relied to obtain the search warrant was substantially identical with the information on which he relied to arrest Charlene Peterson without a warrant and search the Chevrolet. At the preliminary hearing the court refused to review the propriety of the issue of the search warrant, a refusal which the majority of this court holds proper, on the ground that the motion attacking the existence of probable cause for the search warrant should have been made before the magistrate who issued it.

5. On October 25, some four and a half months after their arrests, defendants brought a written motion attacking the validity of the search warrant before the Honorable James D. Tante, the municipal court judge who had originally issued the warrant. Judge Tante ruled that the motion was no longer timely, in that jurisdiction over the case had passed to the superior court, to whose custody had also been delivered the evidence sought to be suppressed.

6. On November 5 a seven-day jury trial started in the superior court before the Honorable Kathleen Parker. Defendants again attacked the arrest of Charlene Peterson and the search of the Chevrolet as having been made without a warrant and without reasonable cause to believe she had committed a felony. Outside the presence of the jury the better part of a day was taken up with the examination of Officer Grennan on reasonable cause, during which he again testified the arrest was based on information from two reliable informers, Walker and Rogers, information from two untested informers, and on furtive conduct of Charlene Peterson at

the time of her arrest. At the conclusion of Officer Grennan's examination Judge Parker ruled that reasonable cause existed for the arrest without a warrant of Charlene Peterson and the search of the Chevrolet, and that evidence thereby obtained was admissible at the trial.

7. At the same stage of the trial defendants orally moved to quash the search warrant as having been issued without probable cause for believing the existence of the grounds on which the warrant was issued, their counsel stating that much the same evidence applicable to the hearing on the arrest would apply to the hearing on the search warrant, and asking that evidence on the arrest be received on the search warrant as well: "Much of the same evidence would, I think, appertain to the search warrant . . . I think we probably would go through about the same thing and I am wondering if the evidence that has been received here would be deemed related also to the search warrant, and all motions in respect to that would be deemed had in respect to the search warrant as well." The motion to quash the search warrant was denied by Judge Parker on the ground that it could only have been made before the magistrate who issued the warrant.

Subsequent to these rulings both defendants were convicted of possession of narcotics for sale, their motions for a new trial were denied, they were sentenced to state prison, and they have appealed their convictions to this court.

The case is complicated by the fact that Charlene Peterson was driving Dewey Wilson's Chevrolet at the time of her arrest and not her own Ford automobile. The police and the district attorney justified her arrest and search as one based on reasonable cause to make an arrest without a warrant, although the police had previously obtained a warrant to search the person of Charlene Peterson, her house, and her Ford automobile, for heroin, and later used this warrant to search the premises at West 113th Street. Factually, the reasonable cause to arrest Charlene Peterson without a warrant was dependent on the testimony of Officer Grennan, who was cross-examined at length both at the preliminary hearing and at the trial itself about his two reliable informers, Walker and Rogers, and his two confidential informers. His testimony is summarized in the Attorney General's brief quoted below.[1]

[1]"The evidence upon probable cause was heard without the jury. It shows that the officers were acting upon information they had received from two reliable informants, J. B. Walker and David Rogers, together with additional information received from two confidential informants. The two named informants had been found to be previously reliable.

Precisely the same information made up probable cause for the issue of the warrant to search the premises at West 113th Street. The search warrant was issued on the affidavit of Officer Grennan, which set forth information he had obtained from two reliable informers, Walker and Rogers, plus information from two untested informers. The affidavit in support of the search warrant, while not part of the original record before this court, is a record which we may judicially notice and is quoted in full below.[2]

---

Arrests had resulted from information given by them. The two other informants were untested at the time of trial. The reliable informant Walker had informed the officers that the appellant Charlene Peterson was a nurse and was delivering heroin to a woman named Louise Brown. Further that the appellant Peterson received her supply of heroin from a person who worked on a ship and brought her a supply of heroin every three or four months. The informant Walker told the officers that he thought appellant Charlene Peterson was a nurse because she always wore a white uniform; that the heroin she handled was pure; it was white, not brown like the stuff that came from Mexico. Informant Walker had observed that the appellant Peterson came to the residence of Louise Brown. Further, this informant learned through visits to the residence of Louise Brown that appellant Peterson supplied her with heroin. The informant Walker remained in communication with the officers from December 1962 to the date of arrest, June 8, 1963. The informant Walker had been known to the police over a period of several years.

"The other named informant, David Rogers, was living at the address of Louise Brown. He described the appellant Charlene Peterson as a tall, light-complexioned colored girl. This informant Rogers also gave the officers appellant Peterson's phone number. He knew appellant Peterson by the name of "Charlene" and he knew of her delivery of heroin to Louise Brown by automobile. This informant also knew appellant Peterson received her heroin by ship from a person who arrived from the Orient every three or four months."

[2]"IN THE MUNICIPAL COURT OF LOS ANGELES JUDICIAL DISTRICT COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

| "STATE OF CALIFORNIA "COUNTY OF LOS ANGELES | AFFIDAVIT IN SUPPORT OF AND PETITION FOR A SEARCH WARRANT |
|---|---|

"Personally appeared before me this 31st day of May, 1963, JAMES GRENNAN, Los Angeles Police Department who, on oath, makes complaint, and deposes and says that he has and there is just, probable and reasonable cause to believe, and that he does believe, that there is now in the possession of Charline Peterson, aka, Charline Merritt
"on the premises located at and described as
240 West 113th Street, Los Angeles, California, a one story white frame single family residence with a garage in rear of residence.
"and in a vehicle described as
1962 Ford Fairlane, yellow sedan, 1963 California license No. QLH 952
"and on the person(s) of
Charline Peterson, aka, Charline Merritt
"the following personal property, to wit:
heroin

The propriety of the ruling of Judge Parker declining to examine the question of probable cause for the issuance of the search warrant, thereby admitting in evidence the heroin

"Facts in support of issuance of search warrant:

"Your affiant has been a police officer for 17 years and for the past 5 years has been assigned to the Narcotics Division of the Los Angeles Police Department with a primary duty of investigating narcotics activity. In his experience, he has made and assisted in making several hundred arrests for narcotics activity. Your affiant has received formal academic and informal on the job training from the Los Angeles Police Department in narcotics and has testified as an expert in the Municipal and Superior Courts of Los Angeles County regarding narcotics charges, usage and traffic several hundred times. Your affiant is the investigator in charge of this case.

"On December 26, 1962 John D. Walker who had given prior information which resulted in the recovery of heroin told your affiant that Louise Brown was selling heroin from her residence at 2033 Harcourt Street, Los Angeles, California; that said Louise Brown purchased her heroin from a female known as Charline who would deliver the heroin by automobile to the above-mentioned location; that Charline was a nurse who imported heroin by ship from the Orient every three or four months.

"On January 8, 1963 your affiant arrested said Louise Brown at the above-mentioned address and recovered heroin there; that at the time of said arrest, David Rogers was in the house; that David Rogers told your affiant that Louise Brown was buying heroin in large quantities from a girl named Charline who was a nurse; that Charline would deliver the heroin to Louise Brown by automobile to the above-mentioned location; that Charline received her heroin from a ship arriving from the Orient every three or four months; that Charline's telephone number was PL 6-0983; on January 8, 1963 said David Rogers also gave reliable information that led to the arrest of one Frank Brown on January 9, 1963 for possession of narcotics at which time narcotics were recovered.

"On March 4, 1963 an untested informant told your affiant that Louise Brown was buying heroin in large quantities from a nurse known as Charline who lived in the south part of Los Angeles and who would deliver the heroin to Louise Brown at the above-mentioned location; that Charline received her heroin by ship from the Orient every three or four months.

"On May 31, 1963 another untested informant told your affiant that this informant was buying heroin in lots of one ounce and more from Charline Peterson who would deliver the heroin by automobile; that Charline can be reached by telephone number PL 6-0983; that Charline keeps her heroin in her residence located at 240 West 113th Street, Los Angeles, California; that Charline received her heroin by ship from the Orient every three or four months and just recently received such shipment.

"Investigation by your affiant revealed that the telephone Number PL 6-0983 is registered to Charline Peterson at 240 West 113th Street, Los Angeles, California.

"Investigation by your affiant revealed that the utilities at 240 West 113th Street, Los Angeles, California are registered to Charline * ((Peterson.)) Merritt. JDT

"Investigation by your affiant revealed that a 1962 Ford Fairlane yellow sedan, 1963 California license No. QLH 952 is registered to Charline Peterson at 240 West 113th Street, Los Angeles, California. On several occasions, the last of which was during the latter half of May,

found on the premises at West 113th Street, is the specific issue before this court. The ruling of Judge Tante on October 25 refusing to entertain a motion to quash the search warrant is not before us, and while there would appear to be considerable justification for his view that jurisdiction over the case had passed to the superior court (*Quan Chick* v. *Coffey*, 75 Cal. 371 [17 P. 427]) and that the delay of four and a half months had rendered the motion to suppress evidence untimely, on this appeal we are not directly concerned with the correctness of his ruling. (*People* v. *Keener*, 55 Cal.2d 714, 720 [12 Cal.Rptr. 859, 361 P.2d 587].)

In my view, Judge Parker should have ruled on the question of probable cause for the issue of the search warrant in determining the admissibility of evidence at the trial, but since the evidence in support of probable cause was before the court I have little doubt that her ruling would have upheld the validity of the warrant. The same information which gave reasonable cause to arrest Charlene Peterson and search the Chevrolet also gave probable cause to issue the search warrant for the premises at West 113th Street. The defect in trial procedure was the lack of a formal ruling on the validity of the search warrant. To meet this formal deficiency I would reverse the judgments without upsetting the verdicts and remand the case to the trial court with instructions to vacate its order denying a new trial and entertain a motion for a new trial, at which time defendants should be given an opportunity to produce oral testimony in support of their attack on the search warrant. (*People* v. *Tucker*, 117

---

1963, your affiant saw the above-described car in the driveway of 240 West 113th Street, Los Angeles, California.

"That based upon the aforementioned information, facts and circumstances, your affiant has reasonable cause to believe that grounds for the issuance of a search warrant, as set forth in Section 1524 of the Penal Code, exist.

"That based upon the above facts, your affiant prays that a search warrant be issued for the seizure of said property, or any part thereof, *((in the day time)) (at any time of the day or night, good cause being shown therefor) and that the same be brought before this magistrate or retained subject to the order of this court pursuant to Section 1536 of the Penal Code.

[Signed] JAMES GRENNAN
Affiant

"Subscribed and sworn to before me
this 31st day of May, 1963
    [Signed] JAMES D. TANTE
Judge of the Municipal Court
Los Angeles Judicial District"

---

*Matter in double parentheses stricken out in original.

Cal. 229, 230 [49 P. 134]; *People* v. *Morton,* 41 Cal.2d 536 [261 P.2d 523].)

Unfortunately, the court reverses the judgments in their entirety and consigns the case to limbo to await some further action on the search warrant by Judge Tante, the issuing magistrate. Since Judge Tante is no longer a member of the municipal court the future prosecution of this case is clouded with uncertainty. The majority opinion apparently accepts the view that when a defendant moves to quash a search warrant all pending proceedings are brought to a halt, and the case must await action by the magistrate who issued the search warrant who is the only judicial officer who can examine the propriety of its issue.

## II

It appears to me the vice in the majority opinion is its assumption that only the issuing magistrate in a proceeding to quash the search warrant under Penal Code, sections 1539, 1540, can determine whether or not the search warrant was issued with probable cause for believing the existence of the grounds on which the warrant was issued. This view appears unduly restrictive. In my opinion both (1) California law outlining the methods of attacking search warrants, and (2) federal constitutional law, permit this issue to be raised in the trial court.

1. What are the limitations on an attack against a search warrant which seeks to go behind the face of the warrant and its supporting affidavit and show that in actual fact there was no probable cause for believing the existence of the grounds on which the warrant was issued? Since the issuance of a warrant is the judicial act of a magistrate it carries a presumption of validity in its favor. (Code Civ. Proc., §§ 1909, 1963, subd. 15.) However this presumption is not conclusive, and under the Constitution a defendant has the right to look behind the supporting affidavit to inquire whether in fact there was probable cause to believe the existence of the allegations used to obtain the search warrant. Yet the exercise of constitutional rights may be regulated in the time, place, and manner of their exercise. Where a defendant wishes to attack the basis for the issuance of a search warrant by contesting the facts set forth in the supporting affidavit, it is reasonable to require him to do this in advance of trial. California has adopted such a policy in construing sections 1539 and 1540 of the Penal Code. A defendant must present a motion to

quash the warrant under these sections before making a further attack against the validity of the underlying allegations used to obtain the search warrant. (*People* v. *Prieto*, 191 Cal.App. 2d 62, 67 [12 Cal.Rptr. 577].) But, once a defendant has made such a motion, even though unsuccessfully, he may continue to raise the same question by way of objections to the admissibility of evidence at the preliminary hearing and at the trial itself.

This was the specific holding of *People* v. *Keener*, 55 Cal.2d 714, 720 [12 Cal.Rptr. 859, 361 P.2d 587]. In that case an attack under Penal Code, sections 1539, 1540, was made before the examining magistrate on the existence of probable cause to support the issuance of the search warrant. The magistrate denied the motion to quash the search warrant. The defendants renewed their attack at the preliminary hearing, this time by way of objections to the admissibility of evidence obtained as a result of the use of the search warrant. Their objections were overruled. Defendants then moved to set aside the information under Penal Code, section 995, on the ground that because there was no probable cause for the issuance of the search warrant the evidence acquired in the search had been illegally obtained. The Supreme Court held the motion to have been properly made.

A defendant who seeks to attack the truth of statements in the supporting affidavit of a search warrant, said the court, must proceed under Penal Code, sections 1539, 1540, and if he does not do so will thereafter be foreclosed from going behind the face of the affidavit. But if he does so proceed, even though denied relief, he can thereafter raise the same issue at the preliminary hearing and at the trial itself. "Defendants, prior to the preliminary hearing, did all that could reasonably be expected of them to preserve their rights, and, under these circumstances, the adverse ruling upon the motion to quash the warrant did not preclude them from subsequently raising at the preliminary hearing their claim that the warrant was defective." (*People* v. *Keener*, 55 Cal.2d 714, 720 [12 Cal.Rptr. 859, 361 P.2d 587]; *Arata* v. *Superior Court*, 153 Cal.App.2d 767 [315 P.2d 473]; *People* v. *Perez*, 189 Cal.App.2d 526, 531 [11 Cal.Rptr. 456].)

Much of the confusion in this case is attributable to defendants' delay of four and a half months in making their motion under Penal Code, sections 1539, 1540, to quash the search warrant. The statute obviously contemplates a prompt, early motion to quash the search warrant, as, for example, occurred

in *Aday* v. *Superior Court,* 55 Cal.2d 789 [13 Cal.Rptr. 415, 362 P.2d 47], where the search warrant was served on September 16 and the motion to quash was filed on September 19. Nevertheless, while defendants were dilatory I do not believe they were foreclosed by their delay from further attacking the search warrant. Since they finally made their motion, although late, they satisfied the prerequisite under California law for an attack on the search warrant at the trial itself.

Having met the prerequisite for challenging the existence of the grounds on which the warrant was issued defendants were entitled to raise this issue at the time of trial. Since defendants' motion to quash had never been adjudicated on the merits, a sound exercise of discretion by the trial court required it to entertain objections to evidence which, it is claimed, had been secured through use of an invalid search warrant. (*People* v. *Berger,* 44 Cal.2d 459, 463, 464 [282 P.2d 509].)

2. Had California not provided an easily accessible method for contesting the admissibility of evidence obtained pursuant to a questioned search warrant, the constitutionality of its procedure in this field might be subject to challenge. Subsequent to the ruling in *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], in which California held that illegally obtained evidence could not be used, the United States Supreme Court has held that the prohibition against unreasonable searches and seizures in the Fourth Amendment to the Constitution is enforceable against the states through the Fourteenth Amendment and that evidence obtained by means of unreasonable searches and seizures must be excluded from state courts as a matter of federal constitutional law. (*Mapp* v. *Ohio,* 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933]; *Ker* v. *California,* 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726].) In criminal cases defendants are permitted to raise federal constitutional objections in any proper manner without being too closely governed by state procedure. (*Henry* v. *Mississippi,* 379 U.S. 443 [85 S.Ct. 564, 13 L.Ed.2d 408]; *Lane* v. *Brown,* 372 U.S. 477 [83 S.Ct. 768, 9 L.Ed.2d 892]; *Griffin* v. *Illinois,* 351 U.S. 12 [76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055].) Even if defendants had not filed a motion under Penal Code, sections 1539, 1540, and thereby met the condition laid down in California law as a prerequisite to a challenge to the validity of the warrant, I believe the federal Constitution would fairly generously excuse compliance with conditions precedent arising out of pro-

cedural complexities and permit defendants to question the admissibility of the evidence at the trial on the ground of an illegal search. (*Aguilar* v. *Texas*, 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723].)

It appears to me the appropriate rule of procedure the United States Supreme Court will follow in considering such constitutional questions, is that outlined in rule 41(e), Federal Rules of Criminal Procedure (rules, incidentally, which have been promulgated by the Supreme Court itself), which, on the timing of a motion to suppress evidence, provides: ''The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing.'' As in the case of California procedure, a sound exercise of discretion by a trial court in passing on constitutional rights would require the court to formally entertain the motion to suppress, since it had not previously been ruled upon on its merits. (*Rugendorf* v. *United States*, 376 U.S. 528, 531-532 [84 S.Ct. 825, 11 L.Ed.2d 887].)

Under this analysis, both California law and the federal Constitution would impel the trial court to exercise its discretion and allow a formal attack at the time of trial on the existence of probable cause for the issuance of the search warrant and thereby resolve the question of the admissibility of evidence claimed to have been seized under an invalid search warrant.

### III

However, this failure of the trial court to rule on the validity of the search warrant was a purely formal error lacking in substantive effect. What was the narrow question with which the court should have dealt? Simply and solely, whether Officer Grennan had probable cause to believe the truth of the statements he set down in his affidavit. Accordingly, when we talk about testing the validity of the issuance of the search warrant we are talking about an opportunity to question Officer Grennan under oath on the contents of his affidavit, on his sources of information, and on his belief at the time in the truth of the matters contained therein. If after cross-examination it appears that Officer Grennan had probable cause at the time to believe in the truth of the statements he made in his affidavit, and if the statements on their face provide justification for the issue of a warrant, then the

legality of the search warrant has been fully tested, and all constitutional and statutory requirements for its issuance have been satisfied. (*People* v. *Acosta,* 142 Cal.App.2d 59, 62-63 [298 P.2d 29].)

In point of fact all this has taken place, not once but twice. At the preliminary hearing and again at the trial itself, Officer Grennan was examined fully on what cause he had to arrest Charlene Peterson without a warrant and search the Chevrolet. His testimony referred to precisely the same information he had set forth in his affidavit to obtain the search warrant. At the conclusion of each hearing the court overruled objections to the admissibility of the evidence and thereby determined that Officer Grennan had had reasonable cause to arrest Charlene Peterson without a warrant. Such an arrest without a warrant had to pass a more stringent test than that required to issue a search warrant. As pointed out by Mr. Justice Goldberg in *Aguilar* v. *Texas,* 378 U.S. 108, 110-111 [84 S.Ct. 1509, 12 L.Ed.2d 723], we give more leeway to the disinterested determination of a magistrate to issue a search warrant than to the hurried action of officers who happen to make arrests, and the reasonable cause which will justify an arrest and search without a warrant must satisfy a more rigorous standard than the probable cause needed to issue a search warrant. ''Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' *ibid.,* and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present. . . .' ''

Nothing remains to be done to test the validity of the search warrant which has not already been done. Officer Grennan has been grilled to a fare-thee-well on probable cause, both at preliminary hearing and at trial. Defendants have had two opportunities to present whatever additional evidence they desired on this issue. The only thing lacking was a formal ruling by the court saying, in effect, ''Yes, the testimony relating to probable cause for the arrest shall be deemed applicable to the search warrant. No, the evidence obtained by the search warrant will not be suppressed because I find the warrant to have been issued on probable cause.''

Procedure is a good servant but a bad master. By reversing the judgments and suspending proceedings pending a hearing

by the magistrate who initially issued the search warrant, we entangle the case in procedure like a fly in flypaper and make its further prosecution speculative. In my view the problem can be readily solved by sending the case back to the trial court with instructions to entertain a motion for a new trial and give defendants an opportunity to attack the search warrant. If the warrant was issued on probable cause, the trial court should so indicate. If not, the motion for a new trial should be granted.

Such a procedure is comparable to that followed by the United States Supreme Court in *Jackson* v. *Denno,* 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908], a case in which the New York procedure for determining the voluntariness of a confession was found inadequate under federal constitutional standards. Prior to submission of the voluntariness of a confession to a jury, the Supreme Court said, due process required the trial judge to make a preliminary finding that the confession was voluntary. The Supreme Court, however, did not set aside the judgment of conviction. It merely required New York to grant petitioner a hearing in order that a judge might determine the voluntariness of his confession. ''It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt or innocence. Jackson's position before the District Court, and here, is that the issue of his confession should not have been decided by the convicting jury but should have been determined in a proceeding separate and apart from the body trying guilt or innocence. So far we agree and hold that he is now entitled to such a hearing in the state court. But if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson's confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for Jackson has already been tried by a jury with the confession placed before it and has been found guilty.'' (P. 394.) (See also *Boles* v. *Stevenson,* 379 U.S. 43 [85 S.Ct. 174, 13 L.Ed.2d 109]; *United States* v. *Shotwell Mfg. Co.,* 355 U.S. 233 [78 S.Ct. 245, 2 L.Ed.2d 234]; *Campbell* v. *United States,* 365 U.S. 85 [81 S.Ct. 421, 5 L.Ed.2d 428].)

We should use the same procedure to advantage here, and direct the trial court to pass on the validity of the search warrant in determining the admissibility of evidence obtained through its use.

Penal Code, section 1260,[3] gives us all the authority we need to carry out the constitutional command not to set aside judgments solely because of technical errors in procedure. (Art. VI, § 4½.)[4] I see no reason why we should overturn a properly conducted jury trial on the supposition that a search warrant might have been issued without probable cause when the record itself tells us the exact opposite.

From the judgment of the majority, I respectfully dissent.

A petition for a rehearing was denied April 27, 1965, and respondent's petition for a hearing by the Supreme Court was denied June 2, 1965.

---

[3]Penal Code, section 1260: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial."

[4]Article VI, section 4½: "No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."